DA 10-0447

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 57

JOHN WATSON,

      Plaintiff and Appellee,

  v.

DEVRA WEST,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DV 03-145
Honorable James A. Haynes, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      James C. Bartlett; Attorney at Law, Kalispell, Montana

      For Appellee:

      David Matthew McLean, Ryan C. Willmore; Bowning, Kaleczyc,
Berry & Hoven, P.C., Missoula, Montana

Submitted on Briefs:  February 23, 2011

Decided:  April 5, 2011

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Devra West appeals a judgment of the District Court, Twenty-First Judicial District, Ravalli County, awarding $42,000 in compensatory damages to John Watson.  We affirm.

## ISSUES

¶2     We restate the issues on appeal:

1.     Whether the District Court followed this Court's instructions on remand.
2.     Whether the District Court lacked subject matter jurisdiction to award damages     for the period between January and July, 2002.
3.     Whether West was denied due process of law because she lacked notice that Watson sought damages for his work on Millennia Mind.
4.     Whether the District Court awarded reasonable compensatory damages.

## BACKGROUND

¶3     This protracted litigation began in 2003.  Watson is a former business consultant who moved to Victor, Montana in 2001.  Shortly thereafter, he began to attend a spirit-mind-body group run by West.  At the time, West primarily ran the Circle of Divine Unity, a non-profit that was in need of organizational structure.  West learned of Watson's skills, and sought his assistance with her business.

¶4     In January of 2002, Watson began performing two contemporaneous but distinct projects for West.  One consisted of Watson sorting out the Circle of Divine Unity and spinning off a number of non-profit charities.  For this service, Watson and West agreed to a salary of $3,000 per month.  As a result of subsequent disagreements, Watson received only

2

partial payment for his six months of work on West's non-profits. In late 2002, the parties resolved this dispute with an accord and satisfaction.

¶5     Watson's second task was the development of Millennia Mind, Inc., a for-profit corporation. The organizational literature explained, "Millennia Mind was born and is now a divine creation of the highest order. The purpose of this enterprise is to bring the sacred laws and principles of creation into an active restructuring of global economics. . . . The goal is to create business and financial paradigms that are grounded in the principles of good-will and global guardianship." Functionally, the purpose of Millennia Mind was to host seminars for high-net-worth individuals. The top one-percent of the wealthiest Americans would attend one-million dollar seminars to learn about building legacies with their wealth. There were a number of conditions precedent to success, including convincing the ultra-rich to actually attend the seminars and securing $1 million in financing from a Brazilian heiress named Corrin Coffin (Tanmayo).

¶6     With regard to compensation, the parties agreed that Watson would receive a salary and a 22% ownership in Millennia Mind. By April 2002, it was agreed that Watson's first-year salary would be either $50,000 or $60,000. They further resolved that in the second year, Watson's salary would increase to approximately $120,000. West was aware that Watson had accepted the lower initial salary because he expected his ownership interests to pay off "down the road."

¶7    Over the first six months of 2002, Watson laid the groundwork for Millennia Mind. West controlled Watson's actions and he followed her instructions. He set up the corporation, worked to develop an image and logo, and created both the business plan and future strategy.

¶8    Towards the middle of 2002, West and Watson's relationship deteriorated. Watson discovered that West had not earned an accredited PhD in divinity, as she claimed. Rather, the PhD had been conferred by one of her own organizations, the Sacred Arts Institute. Furthermore, West informed Watson that he would not be getting paid for some of his services. She asserted that Watson had agreed to provide some of his work for "Seva," a euphemism for free service to the "guru," Devra West. In July, West announced that the "Masters" had advised her that corporate shareholding was a thing of the past, and she would not be issuing shares for Millennia Mind. She refused to discuss alternative ownership structures, and did not compensate Watson for any of his work on Millennia Mind. At that time, Watson also discovered that West had not secured any funding from Tanmayo and had no intention of funding Millennia Mind.

¶9    Watson immediately stopped working with West and subsequently sued her. His complaint alleged five counts: (1) breach of contract, (2) fraud, (3) unjust enrichment, (4) constructive fraud, and (5) constructive termination. West's answer asserted sixteen

affirmative defenses.  The proceedings were delayed repeatedly over the next five years.[1]

Finally, a trial date was set for July, 2008.  West however, failed to comply with any pretrial

deadlines.  As a result, the District Court imposed sanctions pursuant to M. R. Civ. P. 16(f),

struck West's answer and entered default judgment for Watson.

¶10     On October 2, 2008, the District Court held a damages hearing.  West neither attended

nor submitted a brief.  On October 20, the District Court concluded that West's actions

constituted breach of contract, fraud and unjust enrichment.  Watson was awarded $730,000

in compensatory damages and $6,209.27 in attorney fees.  West appealed the sanctions,

award of attorney fees and award of compensatory damages.

¶11     This Court upheld the sanctions and attorney fees award.  However, the District Court

failed to properly assess whether Watson's alleged compensatory damages were reasonable

and clearly ascertainable.  The case was remanded to the District Court for a determination

of reasonable and non-speculative compensatory damages.  On remand, the Honorable James

Haynes assumed jurisdiction.

¶12     On August 11, 2010, the District Court found that West had received and retained the

benefit of Watson's work on Millennia Mind, without ever compensating him.  Watson was

awarded $42,000 in damages for the period between January and July, 2002.  The District

Court found that West made intentionally false representations in order to secure free labor

from Watson, and her actions constituted breach of contract, unjust enrichment and fraud.

---

[1] A detailed recitation of the procedural history between 2003 and 2008 is set forth in *Watson*

The District Court rejected Watson's other alleged damages for future salary, lost stock value, lost profits or other prospective gain. West appealed the District Court's award of compensatory damages.

## STANDARDS OF REVIEW

¶13 Whether a district court has complied with remand instructions is a question of law we review for correctness. *In re Marriage of Pfeifer*, 1998 MT 228, ¶ 9, 291 Mont. 23, 965 P.2d 895.

¶14 We review de novo, whether lack of notice and opportunity for a meaningful hearing deprived a party of due process of law. *Steab v. Luna*, 2010 MT 125, ¶¶ 24-25, 356 Mont. 372, 233 P.3d 351.

¶15 Whether a court possesses subject matter jurisdiction is a question of law, which we review de novo. *In re Fair Hearing of Hanna*, 2010 MT 38, ¶ 13, 355 Mont. 236, 227 P.3d 596.

¶16 "A district court's damage determination is a factual finding which must be upheld if it is supported by substantial evidence; we will not overturn a district court's damages determination unless it is clearly erroneous." *Watson I*, ¶ 18.

## DISCUSSION

¶17 *Whether the District Court followed this Court's instructions on remand.*

---

*v. West*, 2009 MT 342, ¶¶ 6-14, 353 Mont. 120, 218 P.3d 1227 (*Watson I*).

¶18 On remand, a district court must proceed in conformity with the views expressed by the appellate court. *Haines Pipeline Constr. v. Montana Power Co.*, 265 Mont. 282, 290, 876 P.2d 632, 637 (1994). West asserts that the District Court's judgment went beyond this Court's instructions on remand. She asserts that the District Court was restricted to two inquiries: (1) whether Millennia Mind was ever capitalized, and (2) whether Watson mitigated his alleged damages.

¶19 West's reading of the remand order is overly narrow. She correctly points out that the original District Court failed to inquire into capitalization and mitigation. *Watson I*, ¶ 36. However, this Court's remand instruction asked for more than mere resolution of those two issues. In *Watson I*, the district court failed to ensure that Watson's alleged damages were reasonable and clearly ascertainable. *Watson I*, ¶ 37; *Johnson v. Murray*, 201 Mont. 495, 506, 509, 656 P.2d 170, 175, 177 (1982). On remand, the district court was required to determine the "nature and extent" of Watson's alleged damages, and award damages that were reasonable and non-speculative. *Watson I*, ¶¶ 37-38.

¶20 The record reflects that the District Court obeyed this Court's remand instruction. Not only did the District Court answer the questions of mitigation and capitalization, it assessed and rejected, as speculative, much of Watson's alleged damages. Moreover, the District Court found that Watson had been injured to the extent that he had developed Millennia Mind for six months without compensation and concluded that $42,000 represented reasonable and non-speculative damages. Finally, none of the District Court's

7

findings or conclusions is in conflict with the decision of this Court in *Watson I. Muri v. Frank*, 2003 MT 316, ¶ 14, 318 Mont. 269, 80 P.3d 77.

¶21 *Whether the District Court lacked subject matter jurisdiction to award damages for the period between January and July, 2002.*

¶22 West argues that the District Court did not have subject matter jurisdiction to award damages because Watson's complaint did not seek damages for the six-month period that Watson worked on Millennia Mind. West's argument is misplaced. "Subject-matter jurisdiction is a court's fundamental authority to hear and adjudicate a particular class of cases or proceedings." *Lorang v. Fortis Ins. Co.*, 2008 MT 252, ¶ 57, 345 Mont. 12, 192 P.3d 186. Article VII, Section 4(1) of the Montana Constitution provides that, "[t]he district court has original jurisdiction in all . . . civil matters and cases at law and in equity." The District Court possessed subject matter jurisdiction over the civil dispute between Watson and West.

¶23 West's citation to *Steab*, ¶ 24, does not support her position. In *Steab*, the Court clarified that when a party asserts lack of proper notice and opportunity for a meaningful hearing, the question is one of constitutional due process of law not "jurisdiction." *Steab*, ¶ 24. Like *Steab*, West asserts lack of proper notice, and her argument is properly framed as a question of due process of law.

¶24 *Whether West was denied due process of law because she lacked notice that Watson sought damages for his work on Millennia Mind.*

8

¶25    West argues that she had no notice that Watson sought damages for the time period between January and July, 2002.  Due process of law requires reasonable notice so as to give every interested party the opportunity to be heard.  *Baston v. Baston*, 2010 MT 207, ¶ 18, 357 Mont. 470, 240 P.3d 643.  A plaintiff generally cannot recover beyond the case stated in his or her or complaint, because fair notice to the other party is essential.  *Baston*, ¶ 18.

¶26    Watson's reliance on *Baston* is misplaced.  In *Baston*, the district court awarded monetary damages, despite the fact that the only issue listed in the pretrial order was ownership of a house.  *Baston*, ¶¶ 19-20.  This Court held that the district court erred by sua sponte awarding monetary damages based on an unlitigated theory.  *Baston*, ¶ 21.  *Baston* is inapplicable to the case at hand.

¶27    The record reflects that West was aware that Watson sought monetary damages, beginning in January 2002, for the value of his services she had wrongfully retained without compensation.  Watson's complaint alleged the creation of an agreement "on or about January 2002."  He further alleged that West "knew her representations of pursuing the business with Plaintiff was false, her subversive purpose being to extract Plaintiff's services for Defendant's charity with minimal compensation."  Additionally, the complaint stated, "Defendant intended that the Plaintiff rely on the representations in order to receive his valuable services for both her charity and Millennia Mind, Inc."  Moreover, Watson alleged that West, "received the benefit of the Plaintiff's business consulting services in the creation of Millennia Mind, Inc., for which she has not paid."  Finally, Watson prayed for damages

based upon theories of fraud and unjust enrichment. The complaint gave West notice that Watson sought compensation for the six months he developed Millennia Mind.

¶28 Finally, West's purported lack of notice is undercut by her own motion for summary judgment in 2006. West moved for summary judgment on the grounds that Watson's claims for compensation between January and July 2002, had all been resolved by accord and satisfaction. The District Court denied the motion, concluding that there were genuine issues of material fact as to whether the accord and satisfaction had resolved Watson's unpaid development of Millennia Mind. West's articulation of this argument establishes she knew the full extent of Watson's alleged damages. The District Court did not deprive West of due process of law by awarding Watson damages for his six months of unpaid labor.

¶29 *Whether the District Court's award of $42,000 in compensatory damages was reasonable.*

¶30 West argues that the District Court lacked any credible evidence to award compensatory damages to Watson. In all cases, damages must be reasonable. Section 27-1-302, MCA. A district court's determination of damages is a finding of fact which must be supported by substantial credible evidence. *Harding v. Savoy*, 2004 MT 280, ¶ 45, 323 Mont. 261, 100 P.3d 976. The district court is best situated to determine proper damages, and its decision will remain undisturbed unless the amount awarded reflects an abuse of discretion. *Harding*, ¶ 45. "A district court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or so exceeds the bounds of reason as to

work a substantial injustice." *McCormack v. Andres*, 2008 MT 182, ¶ 22, 343 Mont. 424, 185 P.3d 973.

¶31 We conclude the award of $42,000 in compensatory damages was supported by substantial credible evidence. West testified that she hired two other business consultants at a monthly rate of $10,000. Although she asserted that neither consultant worked on Millennia Mind, one of the consulting agreements explicitly referenced Millennia Mind. The District Court found that $10,000 represented a non-speculative, fair market salary for Watson's business services. It multiplied the $10,000 by the six months that Watson had provided unpaid work for Millennia Mind and concluded his damages were $60,000. The District Court then reduced the $60,000 by $18,000, the amount of money Watson earned in his separate work on West's non-profits. Furthermore, nothing in the District Court's decision reflects that the award of damages was arbitrary or substantially unjust. The damages were derived directly from West's testimony, reasonably confined to the period that Watson actually worked on Millennia Mind, and were properly reduced by the amount of his other earnings. The District Court awarded reasonable damages.

¶32 Affirmed.

/S/ MIKE McGRATH

We concur:

/S/ JAMES C. NELSON
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ JIM RICE

11