DA 13-0119

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 348

ROBERT OWEN,

      Plaintiff, Appellee and Cross-Appellant,

  v.

DON SKRAMOVSKY,

      Defendant, Appellant and Cross-Appellee.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV 10-1308(B)
Honorable Robert B. Allison, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Stephanie M. Breck, Justin G. Breck; Kaplan & Breck, PC; Columbia
Falls, Montana

      For Appellee:

          Tammi E. Fisher, Noah H. Bodman; Fisher & Bodman, PC; Kalispell,
Montana

                    Submitted on Briefs:  October 2, 2013
                              Decided:  November 19, 2013

Filed:

          _____
                        Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Don Skramovsky purchased a Mission Foods distributorship from Robert Owen in April 2010.  While Skramovsky paid Owen $10,000 down to be applied to the full purchase price of the distributorship, he took over operation of the distributorship without paying Owen the remaining balance.  Owen sued Skramovsky in the Eleventh Judicial District Court of Montana for breach of contract and unjust enrichment.  Skramovsky counter-claimed that Owen had fraudulently and negligently misrepresented aspects of the business to Skramovsky resulting in Skramovsky's "uninformed" purchase. Following a bench trial, the District Court determined Skramovsky had been unjustly enriched by the transaction and awarded Owen $81,325 plus reasonable costs. Skramovsky appeals and Owen cross-appeals.  We affirm.

## ISSUES

¶2     Did the District Court err in finding that Skramovsky agreed to buy the distributorship for $130,000?

¶3     Did the District Court err in finding that Skramovsky was unjustly enriched?

¶4     Did the District Court apply the proper measure of damages in awarding Owen $81,325 plus costs for his unjust enrichment claim?

¶5     Did the District Court err in finding that Skramovsky had knowledge of the falsity of Owen's representations regarding commissions and the provision of profit and loss statements?

¶6     Owen presents the following issue on cross-appeal:

2

¶7 Did the District Court improperly apply the law to the facts underlying his unjust enrichment/*quantum meruit* claim so as to misstate the damages due him?

## FACTUAL AND PROCEDURAL BACKGROUND

¶8 Robert Owen owned a Mission Foods distributorship in Flathead County, Montana, from 1999 until 2010. He purchased the business for $75,000 at a time when the distributorship was making less than $2,000 per week in gross sales. By the spring of 2009, the distributorship was averaging approximately $8,000 per week in gross sales. Owen testified that operation of the distributorship provided him with a comfortable living without the need for additional employment.

¶9 In 2009, Owen decided to sell his business and met with Don and Tammy Skramovsky in February 2010 to discuss their interest in purchasing the distributorship. He told the Skramovskys that the business generated approximately $8,000 in weekly sales and showed them a claim slip purportedly supporting that figure. Owen and the Skramovskys also discussed the percentage of sales retained by the distributor. Owen claims he told Skramovskys they would keep 15 – 20% depending on the type of products sold, while Skramovsky insists Owen said it was a fixed 20 percent.

¶10 Skramovsky asserts that he requested profit and loss statements from Owen during the February 2010 meeting and Owen agreed to provide them. Owen denies this, saying he never kept such statements but that he agreed to "put together" some financial information for Skramovsky's review. It is undisputed that Owen did not provide any

3

kind of financial documentation either before or after completion of the transfer of the distributorship.

¶11 Owen alleges that the parties discussed a purchase price of $130,000 with $10,000 as a down payment. Skramovsky claims Owen requested $120,000 with a $10,000 down payment. Owen asserts that at the close of the February 2010 meeting, he believed he had a deal with the Skramovskys to purchase his business. He nonetheless subsequently met with Don and Jan Keltner to explore their interest in purchasing the distributorship. After the meeting to discuss the sale, the Keltners accompanied Owen on the distribution route serviced by the distributorship. They later offered to purchase the distributorship for $130,000.

¶12 In March 2010, Owen notified Skramovsky that the Keltners wished to purchase the business for more money than the Skramovsky had offered. He told Skramovsky that if he and his wife wished to purchase the distributorship, the price was now $140,000. It appears that Skramovsky offered $130,000 and Owen accepted.[1] Owen informed the Keltners that the business had been sold. In April and May 2010, Skramovsky gave Owen two checks for $5,000 each. These checks constituted the $10,000 down payment discussed in the February meeting.

¶13 Skramovsky applied with Mission Foods for approval to assume control over the distributorship and signed a distributor agreement with Mission Foods on April 30, 2010. During May 2010, Skramovsky accompanied Owen on at least six occasions along the

---

[1] Owen testified to both a $130,000 and a $140,000 sales price. *See* ¶ 21.

distribution route during which Owen instructed Skramovsky in the operation of the route. Additionally, Owen notified Mission Foods that Skramovsky would be assuming control. These events took place despite the absence of any written sales contract or agreement.

¶14 On June 1, 2010, Owen relinquished control and Skramovsky assumed control over the distributorship. Owen transferred the distributorship's inventory to Skramovsky at that time. On June 7, 2010, Owen presented a proposed written asset purchase agreement to Skramovsky but Skramovsky refused to sign it because it contained terms he claims were never discussed. Owen amended the proposed agreement and presented the amended document to Skramovsky on July 3, 2010. Skramovsky again refused to sign claiming Owen had not completed Skramovsky's training. Owen denies that Skramovsky requested additional training. Ultimately, the parties never entered into a written purchase contract, nor did Skramovsky pay Owen any more money toward the purchase of the distributorship.

¶15 In September 2010, Owen filed a Complaint alleging breach of contract and unjust enrichment. Skramovsky answered the Complaint, presented numerous affirmative defenses and counter-claimed for fraud and negligent misrepresentation. He sought punitive damages as well. The District Court conducted a bench trial in late October and November 2012. The court issued its Findings of Fact, Conclusions of Law, and Order on December 19, 2012. It concluded Skramovsky had been unjustly enriched by his acquisition of the distributorship for a $10,000 payment and, as a result, the court

5

awarded damages to Owen. It calculated these damages based upon "the value of the enhancement to Skramovsky's property as a result of his acquiring the distributorship." Skramovsky was ordered to pay Owen $81,325. The court also dismissed Skramovsky's counter-claims.

¶16 Skramovsky appeals and Owen cross-appeals.

## STANDARD OF REVIEW

¶17 We review the factual findings of a district court sitting without a jury to determine whether they are clearly erroneous. A district court's findings are clearly erroneous if they are not supported by substantial evidence, if the court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. We review for correctness a district court's conclusions of law. *AAA Constr. of Missoula, LLC v. Choice Land Corp.*, 2011 MT 262, ¶ 17, 362 Mont. 264, 264 P.3d 709.

¶18 A district court's determination of damages is also a factual finding which will be upheld if supported by substantial evidence. We will not overturn such a determination unless it is clearly erroneous. *Watson v. West*, 2011 MT 57, ¶ 16, 360 Mont. 9, 250 P.3d 845.

## DISCUSSION

¶19 *Did the District Court err in finding that Skramovsky agreed to buy the distributorship for $130,000?*

¶20 Skramovsky denies having agreed to buy Owen's Mission Foods distributorship for $130,000 or, for that matter, any other price. He claims that he told Owen he would

"consider" paying $130,000 "but only if Owen produced the financial documentation" requested by Skramovsky, which Owen did not do. Skramovsky further argues in the alternative that "[e]ven if [he] did agree to purchase the [d]istributorship for $120,000 or $130,000, he was an uniformed [sic] buyer and therefore, the price is not a 'fair market value' and should not be utilized for any calculation of damages."

¶21 Owen testified that at the end of the February 2010 meeting with Skramovsky, he concluded Skramovsky had agreed to purchase the distributorship for the asking price of $130,000. After being approached by the Keltners, Owen went back to Skramovsky and told him the Keltners had offered a higher price for the distributorship. After discussing this with Skramovsky, Owen concluded that Skramovsky had agreed to purchase the distributorship for the higher price of $140,000. Owen therefore told the Keltners the distributorship had been sold and was no longer available. Subsequently, Owen began training Skramovsky on the route, Skramovsky paid $10,000 down, sought and received approval from Mission Foods to take over Owen's distributorship and began operating the business.

¶22 It is well established that it is exclusively within the province of the trier of fact, and not this Court, to weigh evidence, including conflicting evidence, and judge the credibility of the witnesses. We have repeatedly held that we will not second-guess a district court's determinations regarding the strength and weight of conflicting testimony. *St. James Healthcare v. Cole*, 2008 MT 44, ¶ 43, 341 Mont. 368, 178 P.3d 696, *Varano v. Hicks*, 2012 MT 195, ¶ 9, 366 Mont. 171, 285 P.3d 592.

7

¶23 The District Court was presented with conflicting evidence as to the purchase price and the existence of an agreement between the parties. It was the District Court's responsibility to determine the credibility of the witnesses and weigh the evidence presented. As there was testimony supporting the District Court's findings that Skramovsky did agree to purchase the distributorship for $130,000, the findings are not clearly erroneous nor are the court's conclusions of law in this regard incorrect.

¶24 *Did the District Court err in finding that Skramovsky was unjustly enriched?*

¶25 Because the parties did not enter into a written contract, the District Court concluded the doctrine of unjust enrichment applied. "The doctrine of unjust enrichment is an equitable means of preventing one party from benefiting from his or her wrongful acts." In the absence of a contract between parties, the doctrine of unjust enrichment may create an implied contract in law. *Hinebauch v. McRae*, 2011 MT 270, ¶ 29, 362 Mont. 358, 264 P.3d 1098 (*citing Estate of Pruyn v. Axmen Propane, Inc.*, 2009 MT 448, ¶¶ 63-64, 354 Mont. 208, 223 P.3d 845). Unjust enrichment is simply "[t]he retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected." *Black's Law Dictionary* 1536 (Bryan A. Garner ed., 7th ed., West 1999).

¶26 Skramovsky argues that he did not engage in any "wrongful acts" such as misconduct or taking advantage of Owen. He maintains that at the time Mission Foods transferred control of the distributorship to him, he and Owen were still engaged in negotiations for the sale and that a price had not yet been established nor had Owen

8

provided Skramovsky with requested financial documents. Skramovsky claims he felt "obligated" under the April 2010 distribution agreement with Mission Foods to operate the distributorship even though he had not yet purchased it. Therefore, he asserts there was no "bad act," nor was it misconduct for him to operate the distributorship despite not owning it. Relying on the testimony of his expert witness, Donald Kisler, Skramovsky further asserts that the distributorship had "no value" at the time Skramovsky assumed it and his assumption of the distributorship "did not give him any 'benefit' or value."

¶27 The District Court found that Owen agreed to sell and Skramovsky agreed to buy the distributorship but that no "valid, enforceable agreement to this effect [was consummated] between the parties." The court also found that the value of the distributorship was clearly "above $10,000"—the amount Skramovsky paid to Owen.

¶28 During the three-day bench trial, substantial evidence was presented as to the value of the distributorship. Some of the evidence indicated the distributorship had no value while other evidence indicated a substantial and growing value. The court found that "Skramovsky, by assuming control of the distributorship and deriving all benefit therefrom without paying any further monies to [Owen] other than the previously mentioned $10,000 down payment, has clearly taken advantage of Owen." The District Court continued that "[s]ince June 1, 2010, Skramovsky has been operating the distributorship, which has yielded gross weekly sales in excess of $8,000." Because the value was greater than the amount paid, and Skramovsky was reaping the benefits of

9

operating the distributorship, the District Court concluded Skramovsky was unjustly enriched.

¶29   As addressed above, it is for the trier of fact to weigh the evidence and judge the credibility of the witnesses.  *St. James Healthcare*, ¶ 43.   As the record contains substantial credible evidence reflecting a value to the distributorship greater than the $10,000 paid by Skramovsky, we conclude the District Court's determination that Skramovsky was unjustly enriched is not clearly erroneous.

¶30   *Did the District Court apply the proper measure of damages in awarding Owen $81,325 plus costs for his unjust enrichment claim?*

¶31   The District Court determined that the proper measure of damages for Owen's unjust enrichment claim was either the *quantum meruit* value of Owen's labor and materials or the value of the enhancement to Skramovsky's property.   The court concluded that because there was no evidentiary basis for measuring the *quantum meruit* value, "the value of the distributorship, being the enhancement to Skramovsky's property, must be determined."

¶32   To make such a determination, the District Court considered the value attributed to the distributorship by Owen and Skramovsky when they were negotiating a sale of the distributorship.   Acknowledging that there was no enforceable agreement between the parties, the court nonetheless found that Skramovsky had agreed to purchase the distributorship for $130,000.   This "agreed price" was premised upon Owen's representation that the distributorship had weekly gross sales of $8,000 which was subject to a 20% commission structure.   Such sales and commissions would yield

10

Skramovsky a weekly income before expenses of $1,600. Discounting sales receipts from the first six months of operations during which Skramovsky was learning how to efficiently operate the distributorship, the District Court focused on testimony revealing that during 2011, Skramovsky's commissions averaged $1,124/week, or 70.25% of the commissions Skramovsky expected to receive for his $130,000 investment. Applying 70.25% to the original purchase price of $130,000, the court concluded that a fair value for the distributorship was $91,325. This sum was offset by the $10,000 down payment, resulting in a balance of $81,325.

¶33 Skramovsky does not challenge the District Court's conclusion that there was insufficient evidence to determine a *quantum meruit* value. However he disagrees that a determination of the enhancement to his property should have been based upon "Owen's desired selling price." Skramovsky opines that the benefit bestowed upon him has nothing to do with the price he was originally willing to pay to purchase the distributorship.

¶34 We conclude based upon the facts of this case that the District Court's determination of damages was based upon credible evidence and is not clearly erroneous. The court crafted a reasonable method for determining the value of the distributorship which represented the amount by which Skramovsky was unjustly enriched. We affirm the court's ruling on this issue.

¶35    *Did the District Court err in finding that Skramovsky had knowledge of the falsity of Owen's representations regarding commissions and the provision of profit and loss statements?*

¶36    Skramovsky alleged in his counter-claim that Owen misrepresented the commission structure applied to the distributorship's sales by Mission Foods and that Owen falsely represented he would provide Skramovsky with profit and loss statements reflecting the distributorship's financial performance.  Owen denies both allegations.  To prevail on a claim of actual fraud or negligent misrepresentation, Skramovsky must establish, among other things, that he was unaware that Owen's misrepresentations were incorrect or untrue.  *McCulley v. Am. Land Title Co.*, 2013 MT 89, ¶ 19, 369 Mont. 433, 300 P.3d 679 (setting forth the nine elements of an actual fraud claim); *Harpole v. Powell Cty. Title Co.*, 2013 MT 257, ¶ 28, 371 Mont. 543, 309 P.3d 34 (setting forth the six elements of a negligent misrepresentation claim).

¶37    The District Court dismissed Skramovsky's counter-claim alleging that Owen engaged in fraud and misrepresentation with respect to commissions.  The court found Skramovsky's allegations incredible.  It concluded that even if Owen did represent that the commission return was 20%, Skramovsky knew this to be incorrect in light of the fact that he signed the Mission Foods distributor agreement and initialed the page that set forth the actual commission structure information.  Further, the court found it significant that Skramovsky was aware that Owen had not ever maintained profit and loss statements over the years he operated the business.  It therefore concluded that Skramovsky could not satisfy the elements of a claim of actual fraud and negligent misrepresentation.

12

Again, the court made its determination based upon its perception of the credibility of the witnesses. Having reviewed the record, we cannot conclude that the court's findings in this regard are clearly erroneous or that its conclusions are incorrect. We therefore affirm the court's dismissal of Skramovsky's counter-claims.

¶38 *CROSS-APPEAL: Did the District Court improperly apply the law to the facts underlying his unjust enrichment/*quantum meruit *claim so as to misstate the damages due him?*

¶39 Owen asserts the District Court erred in determining the amount by which Skramovsky was unjustly enriched. He opines that Skramovsky was unjustly enriched by $120,000—the amount of money the Keltners were willing to pay for the distributorship ($130,000 minus Skramovsky's $10,000 down payment). Owen further argues, as noted above, that Skramovsky signed the distribution agreement with Mission Foods and knew exactly what the commission structure was because it was included in the agreement. For this reason, Owen alleges the District Court erred in using a 20% commission factor in its calculation of Skramovsky's enhanced value.

¶40 While we acknowledge there may be multiple ways in which the court could have determined the enhanced value enjoyed by Skramovsky, the method utilized by the court was supported by facts presented to the District Court. And while other facts were also presented that could have supported a different calculation, it was within the province of the District Court to weigh the evidence presented and apply it accordingly. The District Court's determination is not clearly erroneous and we will not substitute our judgment for its determinations.

**CONCLUSION**

¶41    For the foregoing reasons, we affirm the District Court's rulings.  The evidence presented at trial supported the court's findings and the court's conclusions of law were correct.

/S/ PATRICIA COTTER

We concur:

/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ JIM RICE