DA 13-0028

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 379N

IN RE THE MATTER OF THE
PARENTING OF:

A.P., a minor child,

NICHOLAS PYLE,

       Petitioner and Appellant,

    v.

MELISSA SAYLER, n/k/a/ Melissa Dunn,

       Respondent and Appellee.

APPEAL FROM:    District Court of the Twelfth Judicial District,
                In and For the County of Hill, Cause No. DR 03-081
                Honorable John C. McKeon, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Nathan J. Hoines; Hoines Law Office, P.C.; Great Falls, Montana

       For Appellee:

              Robert L. Stephens, Jr.; Southside Law Center; Billings, Montana

                           Submitted on Briefs:  December 3, 2013
                                  Decided:  December 31, 2013

Filed:

                            Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Nicholas Pyle and Melissa Sayler are the biological parents of A.P., born in 2002. The couple broke up in 2003 and have had a contentious relationship since that time. Both parents have moved on to subsequent relationships. In April 2005, the parents entered into a Final Parenting Plan under which A.P. resided primarily with Melissa, and Nicholas had generous visitation and co-parenting rights. In September 2005, Nicholas suffered a serious head injury that left him unable to work. His memory remains impaired as a result and he takes regular medication.

¶3 After entering into the 2005 parenting plan, Nicholas and Melissa continued to have difficulty cooperating with one another and they both filed numerous motions for contempt against the other parent. In 2007, following mediation, the parents entered into a second Final Parenting Plan again with primary residency of the child with Melissa and Nicholas having liberal visitation opportunities. To the extent Nicholas's 2005 injury influences the terms and conditions of the parenting plan, it was addressed in this parenting plan. The District Court issued an Amended Parenting Plan Order reflecting the terms and conditions of the 2007 agreed-upon Final Parenting Plan.

¶4 In 2009, Melissa asked the court to require supervised visitation between Nicholas and A.P. after learning that Nicholas had received four tickets for speeding, one for driving 95 miles per hour in a 70 mile zone. Another of the four tickets was received while A.P. was in the car with him. Nicholas also had received a DUI and a careless driving citation following a one-vehicle accident in which his three-year-old son was a passenger. Nicholas received these citations between November 2007 and September 2009. Melissa also heard from a credible source that Nicholas had attempted suicide in 2009. Fearing for the safety of her child, Melissa requested an interim parenting plan that required Nicholas to undergo psychological testing, complete a medical evaluation, and accept supervision during A.P.'s visits. Following a hearing, the District Court ordered that visitation resume but that Nicholas not be allowed to drive with the child in the car and that one of his parents must be present during the visitation. He was also ordered to complete a chemical dependency evaluation and follow all recommendations.

¶5 In December 2010, Nicholas was charged with Criminal Distribution of Dangerous (Imitation) Drugs, a felony. The transaction allegedly occurred in Nicholas's parents' home where Nicholas and his children lived, and took place on a day when A.P. was visiting. Melissa did not learn of this charge at the time. In April 2011, as a result of Nicholas and Melissa's continued disagreements about visitation, they met with a second mediator and subsequently entered into a Memorandum of Understanding. In May 2012, Melissa learned of Nicholas's then-unresolved drug distribution charge (Nicholas's trial was scheduled for February 2013). She moved to have visitation suspended and for an interim parenting plan. She also notified Nicholas in writing that she would not deliver

3

A.P. to him for his summer visitation. Nicholas responded by moving to have Melissa held in contempt. The District Court conducted a hearing on the matter on September 14, 2012.

¶6 On December 24, 2012, the District Court denied Nicholas's motion to hold Melissa in contempt. The court also stated that while restricted visitation may continue, visitation could not interfere with A.P.'s professional counseling and medical treatment. Additionally, the court ordered that Melissa would be A.P.'s primary residential parent and Nicholas would have visitation on one weekend per month to be supervised by Melissa or her designee. The District Court further ordered that Nicholas could have these limitations lifted upon verifying that he had "adequately addressed chemical abuse issues," and that his criminal charges were resolved through acquittal or compliance with post-conviction terms and conditions. Nicholas appeals.

¶7 On appeal, Nicholas argues that the District Court's findings of fact are not supported by the evidence and that the court did not consider the best interests of the child when amending the parenting plan. He claims that the amendment to the plan "essentially eliminates his custodial visitation rights."

¶8 After a careful review of the District Court record, we affirm the District Court. We acknowledge that the court was presented with substantial conflicting evidence presented by four primary witnesses—Melissa, Nicholas, and Nicholas's parents. As we have stated on numerous occasions, "[i]t is well established that it is exclusively within the province of the trier of fact, and not this Court, to weigh evidence, including conflicting evidence, and judge the credibility of the witnesses. We have repeatedly held

4

that we will not second-guess a district court's determinations regarding the strength and weight of conflicting testimony." *Owen v. Skramovsky*, 2013 MT 348, ¶ 22, 373 Mont. 531, 313 P.3d 205. While Nicholas may claim that the evidence presented was inaccurate or untruthful, the evidence presented in documents and at hearings nonetheless supports the court's findings. Moreover, there is no evidence that the District Court did not consider the child's best interests.

¶9 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for noncitable memorandum opinions. The District Court's findings of fact are supported by substantial evidence and the legal issues are controlled by settled Montana law, which the District Court correctly interpreted.


/S/ PATRICIA COTTER


We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ LAURIE McKINNON


5