No. 00-715

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 49

IN THE MATTER OF THE ESTATE

OF SHIRLEY L. BAYERS,

A Protected Person.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Russell C. Fagg, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Philip P. McGimpsey, Billings, Montana

For James Bennett:

David A. Duke, Billings, Montana

For Guardian Ad Litem for Shirley Bayers:

Damon L. Gannett, Gannett Law Firm, Billings, Montana

For Guardian Judy Trenka:

William J. Mattix, Crowley Law Firm, Billings, Montana

For Respondent:

John T. Jones, Nancy Bennett, Moulton, Bellingham, Longo & Mather, Billings, Montana

Submitted on Briefs: February 8, 2001
Decided: March 22, 2001

Filed:

_____

Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 The Thirteenth Judicial District Court, Yellowstone County, assessed $1,500.00 in attorney fees as a sanction against Philip P. McGimpsey (McGimpsey) for unreasonably and vexatiously multiplying legal proceedings, pursuant to § 37-61-421, MCA. McGimpsey appeals this sanction. We affirm and remand with instructions.

## FACTUAL BACKGROUND

¶2 First Interstate Bank (Conservator) is the court-appointed Conservator of the Estate of Shirley L. Bayers (Bayers), who is incapacitated due to Alzheimer's disease. McGimpsey purports to be Ms. Bayers' private attorney, claiming Bayers hired him after conservatorship proceedings were underway. When McGimpsey began expressing an interest in participating in matters involving Bayers' estate, Conservator became concerned about the extent of McGimpsey's involvement in Bayers' affairs. Conservator's attorney therefore wrote to him requesting a copy of any legal documents he had that may have been executed by Bayers. McGimpsey responded, saying he could provide only "an abstract" of his attorney-client agreement with Bayers, and declining to make any further disclosures, citing the attorney-client relationship.

¶3 On February 16, 2000, following a hearing on Conservator's annual accounting at which McGimpsey was present, the District Court informed McGimpsey that Conservator was statutorily entitled to the documents it had requested from him. The District Court then instructed Conservator to put its request in writing. The next day, counsel for Conservator sent McGimpsey a letter, once again, requesting documents he possessed

having to do with Bayers' affairs. This letter asked McGimpsey to provide:

> [C]opies of any estate plans you have for Shirley L. Bayers, including, but not limited to: any wills; powers of attorney; trusts of which she is a settler; and any contract, transfer, or joint ownership arrangement with provisions for payment or transfer of benefits or interest at her death of another. In the event that you have knowledge of any estate plans that are not in your possession, please provide the name and address of the person in possession of those documents.

The letter went on as follows:

> Furthermore, any person taking actions based upon a Durable Power of Attorney is accountable to the conservator. See Mont. Code Ann. §72-5-501(2). Thus, in the event that you are taking direction from or have an attorney client relationship with any person claiming to be Ms. Bayers' agent or attorney-in-fact under a Durable Power of Attorney for Shirley L. Bayers, please provide a copy of any engagement or retention letters as well as copies of all bills or account statements for services provided under the Durable Power of Attorney.
>
> **If you choose not to provide the requested information within ten days, the conservator will be forced to seek the Court's intervention. In the event the conservator is required to file a motion with the Court, the conservator will seek sanctions in the form of attorneys' fees and costs.** (Emphasis in original.)

¶4 McGimpsey ignored Conservator's request. Accordingly, on April 24, 2000, Conservator filed a motion to compel McGimpsey to provide the requested information, together with a request for attorney fees necessitated by the motion. On April 27, 2000, McGimpsey responded with a letter threatening Conservator's counsel with Rule 11 sanctions if she did not withdraw the motion to compel. Among other things, McGimpsey stated:

> [T]o put this in language that I'm hoping you'll understand, it is my profound and unwavering belief that your Motion and Brief **were not written and filed after reasonable inquiry; are not well grounded in fact; and are not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law**. . . . (emphasis in original)

Before you fall too deeply in love with your current Motion, I would suggest that you secure a copy of (and very, very carefully read) the transcript from the Hearing of February 16, 2000. To analogize: Do you remember the scene from one of the Star Wars's movies where young Luke was being told to 'feel the force; listen to his feelings?' Well . . . , 'read the transcript.' What you will magically find is that my well-prepared and surgically scripted remarks will put an end to you and Damon's [Guardian ad litem] continuous and unnecessary billing for 'housekeeping matters.'

. . . [I]f you're anxious to run with the tall dog litigators in your firm, or for that matter, you need productive billable hours, may I suggest that the following subject areas directed to the financial management of Shirley's account are ripe for the application of your considerable talent. . . .

There followed a laundry list of complaints and criticisms of Conservator's handling of Bayers' estate.

¶5 On May 8, 2000, McGimpsey filed a motion to strike scandalous, immaterial and irrelevant content in Conservator's motion and brief. His motion was denied. On June 1, 2000, after the motion to compel was fully briefed, the District Court granted Conservator's motion to compel and for attorney fees. The District Court indicated in its order that if the amount of attorney fees was contested, a hearing would be held to determine the amount of fees to be awarded.

¶6 On June 7, 2000, McGimpsey filed a motion to alter or amend the District Court's order granting attorney fees. Conservator opposed the motion. The District Court denied McGimpsey's motion, and ordered a hearing on the amount of the sanction to be awarded, "unless the parties can agree to $1,000 in attorney fees being assessed." Conservator agreed to accept the District Court's suggestion. McGimpsey did not. A hearing on the amount of fees was therefore scheduled for July 27, 2000.

¶7 On July 18, 2000, McGimpsey filed a motion to vacate the hearing and moved to establish a discovery schedule regarding attorney fees. The District Court denied the motion at the beginning of the July 27, 2000 hearing. Conservator's counsel then testified as to her reasonable attorney fees incurred due to McGimpsey's conduct. On July 31, 2000, the District Court issued its order requiring McGimpsey to pay Bayers' estate $1,500.00 in attorney fees. McGimpsey filed another motion to alter or amend the order determining attorney fees. The District Court denied the motion on August 30, 2000.

McGimpsey now appeals to this Court.

## DISCUSSION

**¶8 Did the District Court abuse its discretion by sanctioning McGimpsey $1,500.00 under § 37-61-421, MCA, for unreasonably and vexatiously multiplying the proceedings in District Court?**

¶9 The District Court awarded fees to Conservator under § 37-61-421, MCA, which provides:

> An attorney or party to any court proceeding who, in the determination of the court, multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney fees reasonably incurred because of such conduct.

It is within a district court's discretion to award attorney fees under § 37-61-421, MCA. *Rocky Mountain Ent. v. Pierce Flooring* (1997), 286 Mont. 282, 301, 951 P.2d 1326, 1338. We review a district court's determination to grant attorney fees pursuant to § 37-61-421, MCA, for an abuse of discretion. *Tigart v. Thompson* (1990), 244 Mont. 156, 159-60, 796 P.2d 582, 584. This Court generally defers to the discretion of the district court regarding sanctions because it is in the best position to know whether parties are disregarding the rights of others and which sanction is most appropriate. *McKenzie v. Scheeler* (1997), 285 Mont. 500, 506, 949 P.2d 1168, 1172.

¶10 McGimpsey argues that the District Court erred in ordering him to pay fees under § 37-61-421, MCA, because in a civil action such as this one, all discovery and discovery disputes, including sanctions, must be governed by the Montana Rules of Civil Procedure, and not by § 37-61-421, MCA. He also argues that it was error for the District Court to sanction him because it made no findings of fact as to his unreasonable and vexatious conduct. Lastly, he asserts that Conservator totally failed to carry its burden of proof as to the amount of time its attorney spent due to his conduct.

¶11 Conservator counters that the issue before the District Court was not a discovery dispute because there was no litigation and no adversity of parties as envisioned by the rules governing discovery. The only party involved was Ms. Bayers. Conservator also notes that the District Court examined Conservator's request for fees, heard testimony, and

applied the seven factors set forth in *Audit Services, Inc. v. Haugen* (1979), 181 Mont. 9, 591 P.2d 1105. Finally, Conservator points out that the District Court specifically found McGimpsey's conduct to be unreasonable and vexatious, as contemplated by § 37-61-421, MCA. We agree.

¶12 Section 37-61-421, MCA, was modeled after 28 USCS § 1927, with only minor changes made to clarify its applicability to *pro se* litigants as well as attorneys, and to establish that attorney fees may be awarded as damages. *Hearing on* HB *541 Before the House Judiciary Committee*, 49th Legis. (1985) (statement of Judge Robert M. Holter, 19th Judicial District). It was adopted in 1985 to provide redress against persons who abuse the judicial process for their convenience, tactical reasons, personal gain, or the satisfaction of vengeful motives. *Hearing on* HB *541 Before the House Judiciary Committee*, 49th Legis. (1985) (statement of Judge Michael Keedy, 11th Judicial District).

¶13 Contrary to McGimpsey's assertions, we have upheld the award of attorney fees for discovery violations under § 37-61-421, MCA. *See, e.g.*, *In re Marriage of Rager* (1994), 263 Mont. 361, 366, 868 P.2d 625, 628 (failure to appear at hearing and refusal to provide discovery responses warranted sanction under § 37-61-421, MCA); *also see, Tigart*, 244 Mont. at 159-60, 796 P.2d at 584-85 (withholding of requested discovery information requiring a second trial warranted sanction under § 37-61-421, MCA). The point in court proceedings at which the vexatious conduct occurs is not the issue. Rather, it is the unreasonable multiplication of court proceedings that is germane.

¶14 Rules 34 and 37, M.R.Civ.P., anticipate the existence of a dispute between opposing parties. The underlying matter here is not an adversarial proceeding. *See*, *In re Estate of Bayers*, 1999 MT 154, ¶ 14, 295 Mont. 89, ¶ 14, 983 P.2d 339, ¶ 14 (a petition to appoint a guardian is not an adversarial proceeding). Conservatorship proceedings are established to promote the best interests of the protected person. *See*, § 72-5-401 *et seq*., MCA. Conservator was authorized to request the documentation from McGimpsey with or without court authorization or confirmation. Section 72-5-427, MCA. Formal discovery proceedings were not required for Conservator to obtain documents deemed relevant to the protected person's estate.

¶15 McGimpsey intentionally led Conservator to believe he possessed documents relevant to Bayers' estate. When Conservator first requested a copy of any engagement letter, McGimpsey stated he could provide only an "abstract" of the attorney-client agreement because of the other non-conservatorship personal legal matters which he was currently

working on for Ms. Bayers. This led to Conservator's justifiable request to examine representation agreements between McGimpsey and Bayers, which McGimpsey simply refused to answer. On appeal, McGimpsey contends that his "no response" to Conservator's request **was** a response, and should have been construed by Conservator as an indication he did not have any of the documents she requested. We find this argument specious. McGimpsey could have given a straightforward answer. Instead, he chose to force a needless multiplication of proceedings and the pointless involvement of the District Court in this dispute.

¶16 The District Court found that McGimpsey prolonged this matter unreasonably and vexatiously, thus meeting the requirements set forth in § 37-61-421, MCA. The District Court noted it would have been very simple for McGimpsey to write a one-sentence response that he did not have the information requested. This would have ended the inquiry, and would have obviated the necessity for the numerous briefs, hearings and legal proceedings which ensued due to McGimpsey's recalcitrance. The District Court justifiably found that McGimpsey was "playing games" and "pushing Ms. Bennett's [Conservator's counsel] buttons" by forcing this matter forward. We conclude that the District Court did not abuse its discretion by assessing attorney fees against McGimpsey pursuant to § 37-61-421, MCA. The District Court is affirmed on this issue.

¶17 Unfortunately, McGimpsey's inclination to prolong this matter unreasonably and vexatiously did not end in the District Court. McGimpsey forced this matter forward on appeal, unnecessarily requiring the respondents to expend additional attorney fees defending the order of the District Court. As already noted, § 37-61-421, MCA, permits the Court to require an attorney who unreasonably multiplies the proceedings to satisfy personally the expenses and attorney fees reasonably incurred because of such conduct. We conclude that McGimpsey should be responsible under this statute for respondent's expenses and attorney fees incurred on appeal as well as below. Accordingly, we remand to the District Court for the assessment against McGimpsey of the respondent's costs and attorney fees incurred herein.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

Justice Jim Regnier concurring and dissenting:

1. ¶I respectfully dissent to that part of the Court's opinion which awards attorneys fees on appeal. Although this Court certainly has authority to award said fees pursuant to § 37-61-421, MCA, as well as Rule 32 of the Montana Rules of Appellate Procedure, I note that the Respondent First Interstate Bank does not request fees on appeal. In the instant case I would not award fees on appeal sua sponte. In all other aspects, I agree with the Court's opinion.

/S/ JIM REGNIER