JUSTICE COTTER
dissents.
¶70 I dissent from the basic premise underlying the whole of the Court’s Opinion, that being that Janet Redies is a mere “nonclient” or third-party beneficiary of Addy’s legal services. I therefore dissent from all of the conclusions that flow from this premise.
¶71 Cosner was appointed by the District Court in 1995 to act as Redies’ permanent conservator, in light of Redies’ inability to handle her financial affairs and her personal arrangements. Opinion, ¶ 6. As we said in In re Estate of Bayers, 2000 MT 49, ¶ 14, 304 Mont. 296, ¶ 14, 21 P.3d 3, ¶ 14, “[c]onservatorship proceedings are established to promote the best interests of the protected person.” As conservator, Cosner assumed the role of a fiduciary for Redies as the protected person. Section 72-5-423, MCA. In furtherance of the performance of his fiduciary duties, Cosner retained Addy to advise and assist him, as he was empowered to do under § 72-5-427(3)(w), MCA, and the two then met in September 1995 to determine how best to conserve and manage Redies’ estate. ¶ 8. Once a management plan was developed pursuant to Addy’s advice and counsel, Cosner proceeded to manage Redies’ property in accordance with that plan, selling off her property and paying her debts until such time as Redies qualified for Medicaid and SSI coverage. ¶ 10.
¶72 During the early years that Addy advised Cosner concerning Redies’ estate, he referred to himself variously as “I represent the *257 Estate of Janet Redies” (December 1997 correspondence from Addy to Redies’ creditors) and “Attorney for Ms. Redies” (Request for a Fair Hearing filed with the Department of Public Health and Human Services on May 30, 1997). No doubt other filings in this voluminous record reflect similar representations. Matters between Redies on the one hand, and Cosner and Addy on the other, were not at all adversarial until 1998, when Redies had recovered sufficiently to question the disposition of her assets. ¶ 11. Thus, during the period in question-that being the time period during which Redies’ estate was dissipated-Cosner was acting as a fiduciary for Redies, Addy was advising him how best to fulfill that function, and Addy was representing himself to third parties as Redies’ attorney. And, significantly, Addy’s services were being paid for by Redies’ estate. Given these undisputed facts, it mystifies me that we could conclude, as did the District Court, that Redies was at best a third-party beneficiary to whom Addy did not owe a duty of professional care.
¶73 The Court errs in using Watkins Trust v. Lacosta, 2004 MT 144, 321 Mont. 432, 92 P.3d 620, as a template. In that case, the defendant attorney Lacosta was retained by Stanley and Carolyn Watkins to draft an estate plan for the two of them. Lacosta drafted their wills and a Revocable Trust Agreement (Trust). Watkins Trust, ¶¶ 6-7. It eventually became apparent that the instruments Lacosta drafted did not comport with Stanley’s and Carolyn’s wishes, and that the deficiencies in the instruments would have serious implications for Steve Williamson (Steve), the parties’ son and the intended beneficiary of the Trust. Watkins Trust, ¶ 13. Ultimately, the Trust and Steve, individually and as Personal Representative of Stanley’s Estate (Appellants), brought a legal malpractice suit against Lacosta, alleging negligence in her drafting of the Trust documents and Stanley’s will. Watkins Trust, ¶ 1.
¶74 In addressing the question of whether the Appellants had standing to sue Lacosta, we looked at the relationship between Lacosta and each of them separately. First, we found that, because Stanley had been Lacosta’s client and was now deceased, the Estate stood in his shoes and had standing to sue Lacosta. Watkins Trust, ¶ 19. Steve’s standing, however, presented a different question, in that he was claiming standing as a nonclient beneficiary of the Estate. We said that the duty owed to a nonclient beneficiary was a matter of first impression in Montana. Watkins Trust, ¶ 21. It was this analysis that the District Court fastened upon in its Order, concluding it applied to the question of Addy’s duty to Redies (Opinion, ¶ 24) and it is this same analysis that underpins this Court’s erroneous conclusions in ¶¶ *258 53-58 to the same effect.
¶75 The difference between Steve’s position vis-á-vis the defendant attorney Lacosta in the Watkins Trust case and Redies’ position vis-avis Addy in this case is, to my mind, readily apparent. Steve was never Lacosta’s client. Lacosta’s duty of professional care ran to her clients, Testators Stanley and Carolyn, and not to Steve as the beneficiary. This is why the question of his standing was always framed as that of a nonclient. Here, by contrast, Addy was hired to serve Redies’ best interests, and he was paid by her estate to perform this function. In short, Redies was Addy’s client. We therefore err when throughout our analysis, we accept as correct the District Court’s flawed presumption, and cast Redies as a nonclient on par with Steve in Watkins Trust.
¶76 The Court concedes there is some credibility to the position advocated here (see Opinion, ¶ 37), but ultimately rejects it because there is no Montana authority cited for the proposition that an attorney retained by a conservator to protect the interests of a protected person actually owes that person a duty of care. Indeed, there is no Montana authority on point, perhaps because the proposition is so obviously true that it has not been litigated. I submit that the lack of authority for the proposition I advocate here neither renders it unsupportable, nor justifies ALP’s rejection of Redies’ claims-especially in light of the insurer’s possession of correspondence in which Addy actually represented himself as Redies’ attorney or the attorney for her estate. Moreover, I find it especially unfortunate that, while there is likewise no precedent for the position adopted by the Court here-i.e., that the attorney retained by the conservator owes no duty of care to the protected person-the Court has now supplied a precedent by which future litigants, and in particular “protected” persons, will be bound to their detriment.
¶77 If one accepts the premise that Redies was Addy’s client and not a mere nonclient beneficiary of his work, then the entire foundation of the District Court’s analysis and this Court’s Opinion crumbles. And it should. We have in effect said here that an attorney hired and paid by one’s estate to serve the best interests of an incapacitated person does not owe that person a direct duty of professional care. We have erred. I therefore dissent.