FILED

10/05/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0011

DA 21-0011

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 254

IN THE MATTER OF THE CONSERVATORSHIP OF:

H.D.K.,

      A Protected Person.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DG-19-52
Honorable Shane A. Vannatta, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Elliott Dugger, Dugger Law Firm, PLLC, Missoula, Montana

      For Appellee:

      Trent N. Baker, Datsopoulos, MacDonald & Lind, P.C., Missoula, Montana

      Julie R. Sirrs, Boone Karlberg, P.C., Missoula, Montana

Submitted on Briefs:  September 8, 2021

Decided:  October 5, 2021

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Appellant T.K. (Tony) appeals the Findings of Facts, Conclusions of Law, and Order issued by the Fourth Judicial District Court, Missoula County, concerning the conservatorship and estate planning efforts of his elderly mother, H.D.K. Appellees H.D.K. and her daughter, S.K.H. (Sofeea), submitted briefs in response. We affirm.

¶2 We restate the following issues on appeal:

1. *Whether the District Court deprived Tony of procedural due process or abused its discretion by declining to issue a scheduling order, quashing a subpoena for the file of H.D.K.'s attorney, and concluding the conservatorship hearing after three days.*

2. *Whether the District Court erred in finding that H.D.K. intended to allocate 60 percent of her estate to Tony and 40 percent of her estate to Sofeea.*

3. *Whether the District Court erred by not determining the present values of the properties in H.D.K.'s estate.*

4. *Whether the District Court erred in finding that H.D.K. had testamentary capacity.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 H.D.K. is an 85-year-old woman who, along with her late husband, Jim, acquired several properties in and around Missoula. The value of these properties exceeds three million dollars, including several rental properties which provide H.D.K. with substantial monthly income. H.D.K. has two children, Tony and Sofeea. To put it mildly, Tony and Sofeea do not get along. H.D.K. lives with Tony's daughter in Missoula. Tony, his wife, and his son also reside in Missoula. Sofeea and her family live outside of Montana, and Sofeea returns to visit H.D.K. several times per year.

¶4 H.D.K. and Jim's estate planning began in 2009, when the couple met with Dirk Williams (Williams) to discuss estate planning. During these sessions, H.D.K.

2

articulated that, following the death of the last surviving spouse, 60 percent of their assets should go to Tony and 40 percent to Sofeea (the 60/40 Plan). In his Initial Report (Report) to the District Court, Williams noted that H.D.K. never wavered from her desire to implement the 60/40 Plan. H.D.K. and Jim intended to leave more to Tony in recognition of his assistance managing the properties.

¶5 In 2014, Jim and H.D.K. executed a trust (Trust) and pour-over wills. The Trust would hold the membership interests of three limited liability companies (LLCs). Two LLCs, Dara Properties and South First 615, would transfer to Tony upon the death of H.D.K. and Jim. The remaining LLC, Victor Properties, would pass to Sofeea. Around the time of the Trust's execution, H.D.K. prepared the following list of properties each child's LLC would receive:

| Tony: | Sofeea: |
|---|---|
| 320 S. 6th St. W. | 330 Tremont |
| 302 S. 6th St. W. | 710 Edith |
| 612 S. 1st St. W. | 400 Rollins |
| 535 S. 2nd St. W. | 418 Hazel |
| 410 Hazel | 800 Chestnut |
| 615 S. 1st St. W. | Cramer Creek |
| Mountain Shadows lot[1] | Mountain Shadows lot |

H.D.K.'s home at 307 S. 6th Street West would be held in the Trust to pass equally upon her death to Sofeea and Tony.

---

[1] The street addresses of the Mountain Shadows lots are 919 and 923 Simons.

¶6     In 2015, H.D.K. deeded the following properties to each LLC:

| **Dara**: | **Victor**: |
|---|---|
| 241 S. 2nd St. W. (aka 410 Hazel) | 535 S. 2nd St. W. |
| 302 S. 6th St. W. | 330 Tremont |
| 320 S. 6th St. W. | 710 Edith[2] |
| 612 S. 1st St. W. | 400 Rollins |
| 800 Chestnut | |
| 418 Hazel | |

Shortly after the deeds to Victor Properties were recorded, Williams learned that another entity had already registered the LLC's name. The District Court concluded that, but for this error, H.D.K.'s intended 60/40 Plan would have been achieved. Regardless, H.D.K. subsequently executed a deed transferring the same properties to a new LLC. Williams later reported that H.D.K. refused to allow him to file the articles of organization for the new LLC. H.D.K. also refused to allow Williams to record the new deed. Jim died in 2016, leaving H.D.K. to resume the estate planning. After Jim's death, Williams believed Tony was influencing H.D.K. and opposed her estate planning efforts.[3] Because H.D.K. refused to transfer the properties to the new LLC, the deeded properties would remain in H.D.K.'s residuary estate. As a result, Williams indicated that, absent remedial action, Tony would receive nearly 73 percent of H.D.K.'s estate. H.D.K. cancelled several meetings with Williams until July 2018, when H.D.K. sent a letter, written by Tony, terminating Williams's services.

---

[2] H.D.K. sold this property in 2017. Tony received a portion of the proceeds as compensation for his work on the property.

[3] Due to this conflict, Tony filed a grievance against Williams with the Commission on Practice.

4

¶7    A few weeks later, H.D.K. and Sofeea reestablished services with Williams to complete H.D.K.'s estate planning.  After reengaging with Williams, H.D.K. began an extended visit with Sofeea and, between October 2018 and February 2019, only briefly returned to Missoula twice.  In December 2018, H.D.K. wrote a letter to Tony and Sofeea indicating the properties she intended for each child in 2014 had changed, but her desire to implement the 60/40 Plan remained.  The letter referenced an updated list of properties and indicated Tony would receive H.D.K.'s home at 307 S. 6th Street West and Sofeea would receive the property at Cramer Creek.[4]  During the conservatorship proceedings, H.D.K. authenticated the letter and testified that it reflected her current wishes.  The updated list reflected the following distribution:

| **Tony**: | **Sofeea**: |
|---|---|
| 320 S. 6th St. W. | 330 Tremont |
| 302 S. 6th St. W. | 612 S. 1st St. W. |
| 418 Hazel | 535 S. 2nd St. W. |
| 410 Hazel | 400 Rollins |
| 615 S. 1st St. W. | 800 Chestnut |
| 307 S. 6th St. W. | Cramer Creek |
| Mountain Shadows lot | Mountain Shadows lot |

¶8    In May 2019, H.D.K. executed two beneficiary deeds to bring the estate distribution closer to the 60/40 Plan.  The first deed was recorded on May 10, 2019, and named Sofeea as the beneficiary upon H.D.K.'s death of the home at 307 S. 6th Street West and the rental properties 330 Tremont and 400 Rollins.  The second deed would have transferred 615 South 1st Street West to Tony, but the deed has not been recorded.  Williams later

---

[4] Cramer Creek is referred to, variously, as "Borboula" or "Beavertail" throughout the letter and the proceedings.

reported that, had both deeds been recorded, the estate would distribute 64 percent to Tony and 36 percent to Sofeea.

¶9    Sofeea filed a petition for the appointment of a temporary conservator in July 2019, citing the need to protect H.D.K. from the influence of other family members during her estate planning. The District Court issued an order appointing the Western Montana Chapter for the Prevention of Elder Abuse (Conservator) as H.D.K.'s temporary conservator and naming Williams as H.D.K.'s attorney. H.D.K. was examined by a court-appointed neuropsychologist, Dr. Loretta Bolyard, in August 2019, who determined H.D.K. met diagnostic criteria for a major neurocognitive disorder, possibly Alzheimer's disease. Dr. Bolyard expressed grave concerns about H.D.K.'s financial, estate, and legal matters and recommended the District Court appoint a new attorney for H.D.K and name the Conservator as full guardian and conservator. Dr. Bolyard also indicated that H.D.K. was easily persuaded by both children, and that her beliefs could vary depending on who she was communicating with.

¶10    Tony filed a notice of appearance as an interested person in September 2019. Williams filed his Report shortly after. The Report noted that H.D.K. was susceptible to influence by her children, depending on which child was last with her. Williams also included an exhibit he believed closely represented the original intentions of H.D.K. and Jim, which would result in 62 percent of the estate passing to Tony and 38 percent passing to Sofeea. The exhibit provided the following distribution:

| **Tony**: | **Sofeea**: |
|---|---|
| 241 S. 2nd St. W./410 Hazel | 800 Chestnut |
| 302 S. 6th St. W. | 535 S. 2nd St. W. |
| 320 S. 6th St. W. | 330 Tremont |
| 612 S. 1st St. W. | 400 Rollins |
| 418 Hazel | Cramer Creek |
| 919 Simons | 923 Simons |
| 615 S. 1st St. W. | |
| 307 S. 6th St. W. | |

Williams also recommended that, due to his personality clash with Tony and the likelihood that Williams would have to testify during the proceedings, the District Court appoint a different attorney to represent H.D.K. Tony and Sofeea stipulated to this recommendation, and the District Court appointed new counsel for H.D.K. Tony later moved to strike Williams's Report, arguing that Williams could not serve as an advocate and a witness in the same case, that Williams had a conflict of interest with Tony, and that Williams lacked credibility. The District Court denied Tony's motion to strike, finding Tony's discontent with the Report was an invalid reason to strike the Report, that any conflict between Tony and Williams was a personality conflict and not a conflict of interest, that the absence of supporting documents did not invalidate the Report, and that H.D.K.'s rights of confidentiality may not be abrogated lightly.

¶11 One year after the initial petition, the court-appointed visitor met with H.D.K. The visitor found that H.D.K. exhibited mild cognitive impairment. The visitor noted that H.D.K.'s 60/40 Plan remained consistent through 2014 when the Victor Properties, LLC mistake occurred. The visitor noted that H.D.K.'s mind appeared made up for many years and recommended that the District Court implement H.D.K.'s estate plan from when her mental status was intact.

7

¶12   Neither Tony nor Sofeea contested the appointment of the Conservator or the examinations by the neuropsychologist and the visitor. The only contested issue was H.D.K.'s testamentary capacity and estate plan. As a result, the District Court held a hearing on H.D.K.'s testamentary capacity and allowed Tony and Sofeea to present evidence and testimony. The hearing was originally scheduled for three hours but ultimately encompassed over five hours of testimony spanning three days.

¶13   Prior to the hearing, the District Court met with H.D.K. in-chambers to assess her testamentary capacity and mental acuity. Following the in-chambers meeting, H.D.K. underwent "gentle" cross-examination with only counsel present to avoid any influence from her children. H.D.K. testified correctly regarding the identities of her children, grandchildren, and deceased husband. H.D.K further testified that she owned several rental properties and identified over half of the properties. She estimated her monthly income from the properties was about $13,000 and that she received an additional $1,000 monthly from Social Security.[5] H.D.K. correctly identified every non-rental property she owned, specifically her home in Missoula, a cabin at Cramer Creek, and two lots in the Mountain Shadows subdivision on Simons Drive.

---

[5] Tony testified that the properties returned $10,000 per month, and the Conservator provided an affidavit indicating that the properties returned $14,000 per month and that H.D.K.'s Social Security benefits totaled $1,173 monthly, generally in line with H.D.K.'s testimony.

¶14 Following H.D.K.'s testimony, Williams, Sofeea, Sofeea's daughter, and Tony testified. All four testified that H.D.K. had exhibited some decline in mental status, primarily in short-term memory lapses, beginning in 2019. Williams and Sofeea testified regarding H.D.K.'s intended 60/40 Plan. Tony testified that, in June 2019, he had his son direct H.D.K to fill out a "proposed deal" wherein Sofeea would receive only the following properties:

> 612 S. 1st St. W.
> 535 S. 2nd St. W.
> 400 Rollins
> 330 Tremont

Tony testified that he believed H.D.K wanted him to receive all other property, except possibly the Mountain Shadows lots.

¶15 After Tony's testimony, the District Court concluded the hearing and allowed the parties to submit affidavits in lieu of live testimony. Tony submitted four affidavits totaling more than 300 pages, while Sofeea submitted one affidavit. Following the hearing, the District Court appointed the Conservator on a permanent basis. The District Court also issued its Findings of Fact, Conclusions of Law, and Order. The District Court found that H.D.K. intended to distribute her estate pursuant to the 60/40 Plan but was susceptible to the influence of both children. The District Court concluded H.D.K. possessed testamentary capacity and that substantial evidence supported H.D.K.'s proposed 60/40 Plan. The District Court ordered the Conservator to effect the following distribution of properties, subject to valuation and redistribution as necessary, to achieve the 60/40 Plan upon H.D.K.'s death:

9

| **Tony/Dara**: | **Sofeea/Victor**: |
|---|---|
| 320 S. 6th St. W. | 330 Tremont |
| 302 S. 6th St. W. | 612 S. 1st St. W. |
| 410 Hazel/241 S. 2nd St. W. | 400 Rollins |
| 615 S. 1st St. W. | 535 S. 2nd St. W. |
| 418 Hazel | 800 Chestnut |
| 307 S. 6th St. W. | Cramer Creek |
| 919 Simons | 923 Simons |

Tony appeals.

## STANDARDS OF REVIEW

¶16 We review a district court's evidentiary rulings, rulings regarding discovery, and control of pretrial and trial proceedings for an abuse of discretion. *City of Missoula v. Mountain Water Co.*, 2016 MT 183, ¶ 18, 384 Mont. 193, 378 P.3d 1113. To establish an abuse of discretion, the appellant must demonstrate that the district court acted arbitrarily without conscientious judgment or exceeded the bounds of reason. *Mountain Water Co.*, ¶ 18 (citations and quotations omitted).

¶17 We review a district court's findings of facts to determine if they are clearly erroneous. *In re Estate of Quirin*, 2015 MT 132, ¶ 10, 379 Mont. 173, 348 P.3d 658. A court's findings are clearly erroneous if they are not supported by substantial evidence, the court misapprehended the effect of the evidence, or we are convinced by our review of the record that the district court made a mistake. *In re Estate of Quirin*, ¶ 10. We review a district court's conclusions of law for correctness. *In re Estate of Quirin*, ¶ 10. Testamentary intent is a question of fact. *In re Estate of Johnson*, 2002 MT 341, ¶ 18, 313 Mont. 316, 60 P.3d 1014. Existence of testamentary capacity is a question of fact. *In re Estate of Quirin*, ¶ 17.

10

¶18    *1. Whether the District Court deprived Tony of procedural due process or abused its discretion by declining to issue a scheduling order, quashing a subpoena for the file of H.D.K.'s attorney, and concluding the conservatorship hearing after three days.*

¶19    Tony first argues that the District Court's decisions not to issue a scheduling order, to quash his subpoena for the file of H.D.K.'s attorney, and to end the conservatorship hearing after three days violated his due process rights. H.D.K. and Sofeea contend that conservatorship proceedings focus on the individual to be protected and therefore Tony lacks standing to assert a due process violation.

¶20    Article II, Section 17, of the Montana Constitution provides that "[n]o person shall be deprived of life, liberty, or property without due process of law." The Fourteenth Amendment to the United States Constitution provides a similar guarantee. The guarantee of due process has both procedural and substantive components. *Montanans v. State*, 2006 MT 277, ¶ 29, 334 Mont. 237, 146 P.3d 759. Under both state and federal jurisprudence, procedural due process requires notice and an opportunity for a hearing appropriate to the nature of the case. *Montanans*, ¶ 30.

¶21    Tony has alleged a procedural due process violation. However, Tony did not raise his due process argument to the District Court. Moreover, Tony does not allege he was deprived of notice or of an opportunity to be heard. Rather, Tony argues that the District Court's rulings left him unprepared for the conservatorship hearing and that he was unable to present as much testimony as he planned. In so doing, Tony misconstrues the nature of a conservatorship proceeding. A conservatorship proceeding is not adversarial,

but rather "established to promote the best interests of the protected person." *Estate of Bayers*, 2001 MT 49, ¶ 14, 304 Mont. 296, 21 P.3d 3 (rejecting the argument that the Montana Rules of Civil Procedure govern discovery and discovery disputes in a conservatorship proceeding). Regardless of any underlying dispute, H.D.K.'s best interests, not Tony's, were the focus of the proceeding. We further note that, at the conclusion of the hearing, the District Court asked Tony, Sofeea, and H.D.K. to submit their proposed findings of fact and conclusions of law. The record contains voluminous affidavits filed by Tony, but no proposed findings of fact and conclusions of law. Tony had notice, participated throughout the proceeding, testified at the hearing, and failed to file his proposed findings of fact and conclusions of law with the District Court. Accordingly, we decline to address his due process argument further.

¶22 Alternatively, Tony argues that even if he has failed to present a due process claim, the District Court's rulings constituted an abuse of discretion requiring reversal. Tony bears the burden of proving that the District Court acted arbitrarily without conscientious judgment or exceeded the bounds of reason. *Mountain Water Co.*, ¶ 18. We address each ruling in turn.

**Scheduling Order**

¶23 Montana has adopted the Uniform Probate Code (UPC) to govern the affairs of decedents, missing persons, protected persons, minors, and incapacitated persons. Section 72-1-101(2)(b)(i), MCA. The UPC's general provisions, applicable to all UPC proceedings, broadly provide the following permitted pleadings: (a) an application, petition, report, or account filed pursuant to this title; and (b) an objection or response filed

12

pursuant to this title to an application, petition, report, or account. Section 72-1-310(1)(a)-(b), MCA. These general provisions further dictate that the Rules of Civil Procedure govern formal proceedings unless specifically provided otherwise. Section 72-1-207, MCA.

¶24 M. R. Civ. P. 16 governs pretrial management. Pertinently, Rule 16(b) provides that upon request, "except in categories of actions exempted by district court rule, the judge must issue a scheduling order after consulting with the parties' attorneys[.]" Accordingly, a district court has the authority to "make and amend rules governing its practice not inconsistent with these rules or other rules prescribed by the supreme court." M. R. Civ. P. 83. Consonant with these Rules, Montana Fourth Judicial District Local Rule 8(B) provides that conservatorships and guardianships are exempt from the discovery procedure "unless such a case becomes a contested case."

¶25 The provisions of the UPC governing guardianship and conservatorship proceedings are codified in Title 72, chapter 5, MCA. The purpose of a conservatorship is to promote the effective management of the property and best interests of the person to be protected. *Estate of Bayers*, ¶ 14; § 72-5-401, MCA. To promote those interests, a petition to appoint a conservator may be filed by: the person to be protected; any person who is interested in that person's estate, affairs, or welfare; or any person who would be adversely impacted by mismanagement of the person's property and affairs. Section 72-5-401, MCA. After the appointment of a conservator, an interested person may file a petition for the following orders: (a) requiring bond or security, additional bond or security, or reducing bond; (b) requiring an accounting of the trust's administration;

13

(c) directing distribution; (d) removing the conservator and appointing a temporary or successor conservator; or (e) granting other appropriate relief. Section 72-5-413, MCA.

¶26 Tony argues that, while he did not contest the appointment of the Conservator, the District Court nevertheless was aware of an underlying dispute regarding the conservatorship and therefore the proceeding was contested and subject to the discovery procedures of Rule 16(b). We disagree. The Montana Rules of Civil Procedure govern UPC proceedings unless otherwise provided. The Rules further delegate authority to district courts to exempt certain actions. Pursuant to this delegation, the Fourth Judicial District Court has exempted conservatorship and guardianship proceedings unless they are contested. Tony has not demonstrated that H.D.K.'s conservatorship proceeding was contested, and the record does not support such a finding. The record indicates the only contested issue was H.D.K.'s testamentary capacity. Moreover, as the District Court's ruling setting forth the procedural history of the case indicated, Tony consented to the temporary conservatorship and, when he requested the scheduling order, had only filed a Notice of Appearance. The District Court further noted that neither Tony nor any other interested party had filed a petition to remove the temporary conservator or filed any other petition pursuant to § 72-5-413, MCA. The District Court concluded that, absent a dispute, a scheduling order was premature.

¶27 Regardless of any underlying familial issues, Tony failed to present any dispute regarding the conservatorship, as required by the Rules of Civil Procedure and local court rules. Tony consented to the conservatorship and did not file any pleading beyond a Notice of Appearance when he requested the scheduling order. Because the conservatorship itself

14

was not contested, the local court rule exempting conservatorships from scheduling orders applies. Tony has not demonstrated that the District Court acted arbitrarily. The District Court did not abuse its discretion when it declined to issue a scheduling order.

**Subpoena**

¶28 Section 72-5-450, MCA, provides the following framework to produce a protected person's estate planning documents:

> (1) As used in this section, 'estate plan of the protected person' includes but is not limited to:
>
>> (a) the protected person's will;
>>
>> (b) any trust of which the protected person is the settlor or beneficiary;
>>
>> (c) any power of appointment created by or exercisable by the protected person; and
>>
>> (d) any contract, transfer, or joint ownership arrangement with provisions for payment or transfer of benefits or interests at the protected person's death to another or others that the protected person may have originated.
>
> (2) *Notwithstanding 26-1-803 or any case law relating to the attorney-client privilege*, the court in its discretion may order that any person having possession of any document constituting all or part of the estate plan of the protected person shall deliver the document to the court for examination by the court and, in the discretion of the court, by the attorneys for the persons who have appeared in the proceedings under 72-5-444 through 72-5-450 in connection with the petition filed under 72-5-444 through 72-5-450.

(Emphasis added.)

¶29 M. R. Civ. P. 45(d)(3)(A)(iii) requires a court, upon motion, to quash a subpoena that requires disclosure of privileged or other protected matter if no exception or waiver applies. We have frequently recognized the well-accepted rule that "this Court will not

15

review an issue that was not raised in the district court. It is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider." *Martz v. Beneficial Montana, Inc.*, 2006 MT 94, ¶ 25, 332 Mont. 93, 135 P.3d 790.

¶30 H.D.K., through her attorney, filed a motion to quash noting the broad request implicated documents subject to the attorney-client privilege between Williams and his clients, H.D.K. and Jim, who had never waived the privilege. On appeal, Tony argues that, had he been able to reply to H.D.K.'s objection, he would have argued that H.D.K. waived the privilege and that Williams should produce a privilege log. However, Tony never raised his concerns at the hearing held on September 18, 2020—when the District Court explained its ruling—that the documents should be produced. Moreover, he failed to present this argument prior to the second hearing as well. The District Court had no opportunity to consider this argument, and it would be fundamentally unfair to say the District Court erred on an issue it could not consider. *See Martz*, ¶ 25. We decline to address arguments Tony would have raised.

¶31 The District Court consistently recognized H.D.K.'s rights of confidentiality. H.D.K.'s objection to the subpoena raised attorney-client privilege, requiring the District Court to quash the subpoena if no waiver or exception applied. At a hearing after quashing Tony's subpoena, the District Court noted that H.D.K.'s mild cognitive disability did not mean that attorney-client privilege lapsed. In its order denying Tony's motion to strike Williams's Report, the District Court noted that it would not casually abrogate H.D.K.'s confidential relationship and constitutional right to privacy. We will not hold the

District Court erred for failing to consider hypothetical arguments Tony would have made. The District Court did not abuse its discretion by quashing Tony's subpoena for Williams's file.

**Hearing Duration**

¶32 A district court retains broad discretion in determining issues related to trial administration. *Fink v. Williams*, 2012 MT 304, ¶ 18, 367 Mont. 431, 291 P.3d 1140. One matter of trial administration is the district court's establishment of "a reasonable limit on the time allowed to present evidence" under M. R. Civ. P. 16(c)(2)(O).

¶33 Tony contends the District Court's decision to end the conservatorship hearing after three days of testimony, including Tony's, prevented him from introducing live testimony from his daughter. This misrepresents what actually occurred. At the September 23 hearing, Sofeea suggested three hours for the hearing on testamentary capacity. Tony responded that the hearing may take less than three hours. The hearing ultimately spanned three days with over five hours of testimony. At the close of the hearing, Tony objected to the hearing's conclusion. Recognizing Tony's objection, the District Court allowed the parties to submit affidavits regarding H.D.K.'s testamentary intent in lieu of testimony. Tony submitted several affidavits, including one from his daughter. Given that Tony testified at the hearing and was able to present affidavits in lieu of live testimony, he has not demonstrated that the District Court abused its discretion when it concluded the hearing on October 6.

17

¶34  The District Court did not abuse its discretion when it declined to issue a Rule 16 scheduling order, quashed Tony's subpoena, and concluded the conservatorship hearing after three days.

¶35  *2. Whether the District Court erred in finding that H.D.K. intended to allocate 60 percent of her estate to Tony and 40 percent of her estate to Sofeea.*

¶36  There is no definite fixed rule for determining testamentary intent, but each case must stand on its own peculiar facts and circumstances. *In re Estate of Johnson*, ¶ 18. "Testamentary intent is a question of fact to be decided by the District Judge or a jury, pursuant to § 72-1-208, MCA." *In re Estate of Johnson*, ¶ 18. Testamentary intent requires a testator to intend that a document will dispose of their property after death. *In re Estate of Lambert*, 2006 MT 229, ¶ 21, 333 Mont. 444, 143 P.3d 426. It is well established that "it is exclusively within the province of the trier of fact, and not this Court, to weigh evidence, including conflicting evidence, and judge the credibility of the witnesses." *Owen v. Skramovsky*, 2013 MT 348, ¶ 22, 372 Mont. 531, 313 P.3d 205. Accordingly, we will not second guess a district court's determinations regarding the strength and weight of conflicting testimony. *Owen*, ¶ 22.

¶37  Tony argues the District Court's finding that H.D.K. intended to implement the 60/40 Plan is not supported by substantial evidence. Alternatively, Tony argues that, even if substantial evidence existed, the District Court misapprehended the effect of the evidence. The District Court heard testimony from Williams that, during his estate planning work with the couple, H.D.K. and Jim's plan allocated 60 percent of the estate to Tony and 40 percent to Sofeea. The District Court also noted that H.D.K. authenticated a

18

letter she wrote to Tony and Sofeea in December 2018. The letter indicated H.D.K. had changed her mind regarding the specific properties that each child would receive, but her intention to implement the 60/40 Plan remained. The District Court found the visitor recommended that H.D.K.'s estate planning wishes from when her mental status was intact be maintained, including the desire to execute the 60/40 Plan. H.D.K. reiterated that allocation in her testimony at the in-chambers examination.

¶38 The District Court also heard testimony from Tony and Sofeea regarding H.D.K.'s testamentary intent. At the close of the hearing, the District Court allowed the parties to submit additional affidavits regarding H.D.K.'s testamentary intent in lieu of testimony. Tony submitted four affidavits totaling over 300 pages. Sofeea submitted one seventeen-page affidavit. Tony argues that the District Court did not consider his affidavits or Dr. Bolyard's report on the question of H.D.K.'s testamentary intent, but instead relied on Sofeea's affidavit. The District Court was presented with conflicting testimony and voluminous affidavits. It was the District Court's responsibility to determine the credibility of the witnesses and weigh the evidence presented, and we decline to second guess that determination. *See Owen*, ¶ 22. Likewise, Tony has presented minimal conflicting evidence and has failed to demonstrate that the District Court misapprehended the effect of the evidence presented. The District Court did not err in finding that H.D.K. intended to allocate 60 percent of her estate to Tony and 40 percent to Sofeea.

¶39   *3. Whether the District Court erred by not determining the present values of the properties in H.D.K.'s estate.*

¶40   Tony next contends that no evidence of valuation supported how or why the District Court's ordered distribution effectuates a 60/40 division of H.D.K.'s property. Tony analogizes the division of property to marital dissolution proceedings, where courts must first value property for the purposes of distribution. Sofeea and H.D.K. argue that the District Court relied on documents prepared by H.D.K. for its ordered distribution. They further argue that current values of the property would prove irrelevant, as the properties would not actually be distributed until H.D.K.'s death—potentially years in the future. We agree.

¶41   The District Court relied on property lists prepared by H.D.K. identifying the properties each child would receive upon her death. The District Court recognized property valuations could fluctuate, and the Conservator may need to sell property to support H.D.K.'s needs. Accordingly, the District Court ordered the Conservator to use its best efforts to maximize rental property income before selling any properties. If properties must be sold, the District Court ordered the Conservator to select properties in a manner consistent with H.D.K.'s intent to effectuate the 60/40 Plan. The District Court further ordered the Conservator to value H.D.K.'s property on her death and make distributions as needed to fulfill H.D.K.'s intended distribution. The District Court's Order recognizes a present property valuation would prove irrelevant, as Tony and Sofeea may not receive any distribution until several years later. Tony advances no applicable authority and presents no evidence supporting his argument that property valuations are required when

20

distribution will not occur until years later. The District Court did not err by not determining the present values of the properties in H.D.K.'s estate.

¶42    4.   *Whether the District Court erred in finding that H.D.K. had testamentary capacity.*

¶43    Testamentary capacity requires the testator be aware of the following three elements: (1) the nature of the act to be performed, (2) the nature and the extent of the property to be disposed of, and (3) the objects of their bounty. *In re Estate of Quirin*, ¶ 14. Independent consideration of the testator's mental capacity to understand these elements is not required. *In re Estate of Quirin*, ¶ 16. We also do not require an independent consideration of the testator's strength and clearness of mind or memory. *In re Estate of Quirin*, ¶ 16. The *Quirin* Court noted that conflicting evidence regarding testamentary capacity may exist in most cases, but "it is not the role of this Court to weigh conflicting evidence or to determine whether there is support for findings that were not made . . . [w]here conflicting evidence exists, we will not substitute our judgment for the district court's." *In re Estate of Quirin*, ¶ 22 (citations omitted). The *Quirin* Court further noted that the mere presence of conflicting evidence does not render the district court's finding clearly erroneous. *In re Estate of Quirin*, ¶ 22.

¶44    The District Court's finding that H.D.K. was aware of each of the three elements was supported by substantial evidence. First, H.D.K.'s awareness of the nature of the act to be performed, namely the designation of who would receive her properties upon death, was supported by substantial evidence. The District Court noted the following actions taken by H.D.K. regarding her estate planning: executing a trust, amending that trust,

21

executing a beneficiary deed, and writing a letter explaining her choices to her children. The District Court also examined H.D.K. in-chambers and heard testimony regarding H.D.K.'s estate planning efforts from Williams. Substantial evidence indicates that H.D.K. understood the nature of the act to be performed.

¶45 Second, H.D.K.'s awareness of the nature and extent of her property was also supported by substantial evidence. Tony does not dispute the District Court's finding on this element and acknowledges that H.D.K. generally correctly identified her properties to be disposed of. Substantial evidence indicates that H.D.K. was aware of the nature and extent of her property.

¶46 Finally, H.D.K.'s awareness of the objects of her bounty was also supported by substantial evidence. The District Court noted that H.D.K. accurately identified the objects of her bounty as her children, Tony and Sofeea. Tony argues that the District Court's finding that H.D.K. was aware of the objects of her bounty "ignores the point of the entire proceeding—to determine *which* sibling would receive *which* properties." (Emphasis in original.) In essence, Tony argues that, to possess testamentary capacity, H.D.K must specifically allocate each piece of property to the intended beneficiary. Preliminarily, we reiterate that conservatorship proceedings are not adversarial, but instead "are established to promote the best interests of *the protected person*." *Estate of Bayers*, ¶ 14 (emphasis added). Moreover, Tony misconstrues the fundamental meaning of the objects of a testator's bounty. Black's Law Dictionary defines a synonymous term, "natural object," as "[a] person likely to receive a portion of another person's estate based on the nature and circumstances of their relationship." *Natural Object, Black's Law Dictionary*

22

(11th ed. 2019). Our jurisprudence has long supported this understanding. *See, e.g., In re Estate of Bodin*, 144 Mont. 555, 560, 398 P.2d 616, 619 (1965) (restating the third *Quirin* element as "the names and identity of the persons who are to be the objects of his bounty, and his relation towards them.") (citations and internal quotations omitted). Tony does not dispute that H.D.K. was aware of Tony and Sofeea or that H.D.K. was aware that they were her children and would receive her property. The District Court weighed the evidence and found that H.D.K. was aware of the objects of her bounty.

¶47 Tony contends that the District Court incorrectly found H.D.K. "retain[ed]" testamentary capacity. Tony's argument rests on evidence indicating H.D.K. had not yet made up her mind regarding the distribution of her properties. However, the mere existence of conflicting evidence does not render the District Court's finding clearly erroneous. The District Court had the opportunity to weigh all the evidence and testimony, and we decline to substitute our judgment for the District Court's. *See In re Estate of Quirin*, ¶ 22. The District Court correctly found H.D.K. possessed testamentary capacity.

## CONCLUSION

¶48 The District Court did not abuse its discretion when it declined to issue a scheduling order, quash Tony's subpoena for the file of H.D.K.'s attorney, and concluded the conservatorship hearing after three days. The District Court did not err when it found H.D.K. intended to allocate 60 percent of her estate to Tony and 40 percent to Sofeea. Nor did the District Court err by not determining the present values of the properties in H.D.K.'s estate. Finally, the District Court did not err when it found H.D.K. had testamentary

capacity.  The District Court's Findings of Facts, Conclusions of Law, and Order is affirmed.

/S/ LAURIE McKINNON

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR