FILED

January 13 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0705

DA 13-0705

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 9

_____

IN RE MARRIAGE OF:

MELINDA EDWARDS,

       Petitioner and Appellee,

  and

JIMMY JOHN EDWARDS,

       Respondent and Appellant.

------------------------------------------------

MELINDA EDWARDS,

       Counterclaimant,

  and

BI LO FOODS, INC.,

       Third Party Defendant.

_____

APPEAL FROM:    District Court of the Fourth Judicial District,
                   In and For the County of Missoula, Cause No. DR 11-768
                   Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              P. Mars Scott, P. Mars Scott Law Offices, Missoula, Montana

       For Appellee:

              Dennis E. Lind, Datsopoulos, MacDonald & Lind, PC, Missoula, Montana

_____

                              Submitted on Briefs:  October 22, 2014
                                    Decided:  January 13, 2015

Filed:

                         _____
                                 Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1    In July 2013, following a three-day hearing with testimony from numerous witnesses, the Fourth Judicial District Court for Missoula County, issued a dissolution decree dissolving the 23-year marriage of Melinda and Jim Edwards. In its lengthy Decree, the court adopted a Final Parenting Plan for the parties' only remaining minor child who has since reached the age of majority. The District Court also divided a substantial marital estate. As the majority of marital assets were held in Jim's corporation, Bi Lo Foods Inc., the District Court directed Jim to undertake an IRS-regulated Divisive Reorganization (D Reorg) of Bi Lo. Jim appeals the District Court's valuation of his half of the estate and the D Reorg requirement. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    The parties married in Missoula, Montana, in 1989 and had three children, all of whom have reached majority. During the marriage, the parties acquired a duplex located on 35 acres of waterfront property on the Clark Fork River. The duplex was put in Melinda's name. Additionally, Jim purchased his family's well-established Bi Lo Foods grocery store. He renamed the store Pattee Creek Market (PCM) and it is currently located at 704 SW Higgins, Missoula. PCM's grocery business is one of several assets held by Jim's Montana corporation, Bi Lo Foods Inc. Jim is the sole shareholder in Bi Lo Foods Inc. The other corporate assets included:

(1) the building in which and the land upon which PCM is located;

(2) Trout Meadows River Ranch (the Ranch), an approximate 350-acre ranch located west of Missoula on Mallard Way;

(3) a newly-constructed residence located at the Ranch;

2

(4) the previous residence located on the Ranch property referred to as the "old ranch house";

(5) an older residence and shop located on a separate 1.6 acre parcel adjacent to the Ranch property, and

(6) various equipment and personal property.

¶3     After deriving values for all the real property, and considering business cash flows, marital contributions, liabilities, and numerous other relevant factors, the District Court determined the net value of the marital estate was approximately $2.25 million.   In an attempt to equitably divide the marital assets, the court awarded the business interests of PCM, the store's building, fixtures, equipment, and the land upon which it is located to Jim. It awarded the duplex and the Ranch with its buildings to Melinda.

¶4     In its analysis, the court noted that Bi Lo Foods Inc. was incorporated in 1988 as a C Corporation but that in 2010 Jim converted it to an S Corporation.  However, in accordance with applicable IRS rules, Bi Lo Foods will continue to incur taxes under C Corp rules for a period of 10 years after the conversion, or until November 30, 2020.  Under these rules, if real property or assets held by Bi Lo Foods Inc. are sold or transferred out of the corporation, the corporation incurs a tax consequence.  After hearing considerable expert testimony about distributing corporate assets in a marital dissolution, the District Court directed Jim to "proceed with a Divisive Reorganization pursuant to the IRS Rules to accomplish the division of assets as set forth herein in order to avoid an immediate tax consequence to the Bi-Lo Corporation or the parties."  The court determined that a D Reorg would allow Bi Lo to transfer the Ranch and its appurtenances to Melinda with the least amount of taxes or cost. The District Court primarily based this conclusion on the testimony of Ben Yonce,

3

Melinda's expert witness and a certified public accountant (CPA) with experience in distribution of assets pursuant to a D Reorg.

¶5 Jim moved the District Court to amend the Decree, arguing that a D Reorg of Bi Lo Foods would not meet IRS guidelines and the tax consequences of a failed D Reorg could be devastating to the value of the marital assets. Additionally, he argued that the court's valuation of PCM was not supported by the evidence. The District Court denied his motion on the grounds that Jim provided "no basis for altering or amending the [c]ourt's decision pursuant to Rule 59." The court noted the Jim was merely restating arguments presented at trial and that restated arguments were inadequate to meet the requirements of Rule 59(e). Jim appeals both the District Court's final decree and its order denying his motion to amend.

## ISSUES

¶6 A restatement of the issues on appeal is:

¶7 Did the District Court err in ordering Jim's Bi Lo Foods corporation to undergo a D Reorg in order to effect an equitable distribution of the marital assets?

¶8 Did the District Court abuse its discretion in valuing and distributing the marital estate?

## STANDARD OF REVIEW

¶9 We review a district court's findings of fact to ascertain whether they are clearly erroneous. A finding is clearly erroneous if it is not supported by substantial credible evidence, if the trial court has misapprehended the effect of the evidence, or if a review of the record leaves us with the definite and firm conviction that a mistake has been committed.

4

We review a district court's conclusions of law for correctness. *In re Estate of Hannum*, 2012 MT 171, ¶ 19, 366 Mont. 1, 285 P.3d 463 (internal citation omitted).

¶10 Absent clearly erroneous findings, we will affirm a district court's division of property unless there was an abuse of discretion. A district court abuses its discretion if it acts arbitrarily without conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *In re Lundstrom*, 2010 MT 261, ¶ 11, 358 Mont. 318, 245 P.3d 25.

## DISCUSSION

¶11 *Did the District Court err in ordering Jim's Bi Lo Foods corporation to undergo a D Reorg in order to effect an equitable distribution of the marital assets?*

¶12 Jim argues on appeal that the District Court's distribution of the marital property was inequitable. He asserts that the court erred as a matter of law when it determined that a D Reorg could accomplish the transfer of the Ranch to Melinda without tax consequences to Jim and Bi Lo. Jim claims that his corporation does not meet the requirements of a D Reorg and that a failed attempt to reorganize under the applicable rules will result in significant IRS personal and corporate penalties for Jim and Bi Lo Foods Inc.

¶13 The Internal Revenue Code (IRC) defines various corporate reorganizations that include certain types of asset acquisitions or transfers. 26 U.S.C.S. § 368(a)(1)(D) defines a divisive reorganization, or D Reorg, as:

> a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor, or one or more of its shareholders . . . is in control of the corporation to which the assets are transferred; but only if, in pursuance of the plan, stock or securities of the corporation to which the assets are transferred are distributed in a transaction which qualifies under section 354, 355, or 356.

5

It is undisputed that 26 U.S.C.S. § 355 (§ 355) applies to the case before us. Section 355 permits tax-free separations of one of more active businesses if specific statutory and judicial requirements are met, including, but not limited to, "control," "active trade or business," "corporate business purpose," "continuity of shareholder interest," and "continuity of business enterprise."

¶14   As applied to the facts of this case, to initiate a D Reorg Jim would create a Bi Lo subsidiary, referred to as NewCo in this example. Bi Lo would transfer the Ranch to NewCo, and stock in NewCo would be issued to Bi Lo and then immediately transferred to Jim. At this stage, Jim would continue to be the sole shareholder in both entities, satisfying both the control and continuity of shareholder interest requirements. Once reorganization was complete, Jim would transfer all of the stock in NewCo to Melinda.

¶15   Jim asserts that a D Reorg will fail because there is no (1) valid business purpose for the reorganization; (2) continuity of shareholder interest; and (3) continuity of business enterprise for both corporations. He maintains that he is being ordered to reorganize under the Dissolution Decree in order to transfer assets to Melinda and that this reason does not constitute a valid business purpose for reorganization.

¶16   Jim further argues that if he is required to transfer the stock of NewCo to Melinda, there will be no continuity of ownership interest. He cites multiple Tax Court cases for the proposition that the purpose of the continuity of business interest requirement is to allow a corporation to be divided or change its organization without tax consequences when the new organization continues to be owned and operated by the same shareholder. He maintains that because he will not retain ownership in NewCo, this statutory requirement will not be met.

6

Lastly, he submits that the rules require NewCo to be "engaged immediately . . . in the active conduct of a trade or business" that it has been engaged in for the five years preceding the reorganization. Jim maintains that the Ranch has not been engaged in a business enterprise for 5 consecutive years. He therefore predicts that the IRS will reject the reorganization as a D Reorg and that he and Bi Lo will face crippling tax consequences.

¶17    Melinda asserts that because the grocery store and the ranch activities are separate and distinct, division of the assets into separate corporations is reasonable and justified and would satisfy the rule requiring a "business purpose" for reorganization. She also argues that distribution of the marital assets through a D Reorg does not run afoul of the "control of ownership" rule because neither party intends to sell the assets and the new corporation stock will be transferred to Melinda pursuant to 26 U.S.C.S. § 1041.[1] She rejects Jim's "active business" argument by noting that Jim has consistently reported "ranch activity" on Bi Lo's tax return as an active trade or business. She submits that Jim's argument implies that ranch activity should be passive for purposes of disallowing the D Reorg, but active for purposes of deducting current losses.

¶18    The disposition of this case rests on whether there was sufficient evidence to support the District Court's findings and whether the court's conclusions based upon those findings is correct. The District Court was presented with substantial conflicting expert testimony concerning the appropriateness of a D Reorg of Bi Lo Foods. Jim's expert testified that a D Reorg of Bi Lo will fail while Melinda's expert opined that it would satisfy the applicable

---

[1] 26 U.S.C.S. § 1041 provides for transfers of property between spouses incident to divorce. Section 1041(a) states: No gain or loss shall be recognized on a transfer of property from an individual to (or in trust for the benefit of)--(1) a spouse, or (2) a former spouse, but only if the transfer is incident to the divorce.

7

rules. "It is well established that it is exclusively within the province of the trier of fact, and not this Court, to weigh evidence, including conflicting evidence, and judge the credibility of the witnesses. We have repeatedly held that we will not second-guess a district court's determinations regarding the strength and weight of conflicting testimony." *Owen v. Skramovsky*, 2013 MT 348, ¶ 22, 372 Mont. 531, 313 P.3d 205, *citing St. James Healthcare v. Cole*, 2008 MT 44, ¶ 43, 341 Mont. 368, 178 P.3d 696. Here, the record supports the District Court's challenged findings and its conclusions based upon those findings. We therefore will not disturb the court's ruling requiring divisive reorganization.

¶19 As for the District Court's denial of Jim's motion to amend the ruling, the court's obligation upon receipt of Jim's motion was to determine whether Jim satisfied the requirements of Rule 59 permitting an amendment. In *Nelson v. Driscoll*, 285 Mont. 355, 360, 948 P.2d 256, 259 (1997), we stated:

> While Rule 59 does not identify any specific grounds supporting a motion to alter or amend a judgment, commentators have identified four subject areas where parties have successfully pursued such a motion. These four areas include motions which are filed: 1) to correct manifest errors of law or fact upon which the judgment was based; 2) to raise newly discovered or previously unavailable evidence; 3) to prevent manifest injustice resulting from, among other things, serious misconduct of counsel; or 4) to bring to the court's attention an intervening change in controlling law.

We also stated that a motion to alter or amend is "not intended merely to relitigate old matters nor are such motions intended to allow the parties to present the case under new theories." *Nelson*, 285 Mont. at 360-61, 948 P.2d at 259. "A motion to alter or amend should not present arguments which the court has already considered and rejected." *Nelson*, 285 Mont. at 361, 948 P.2d at 259. Jim argued in his motion that the judgment must be amended to correct manifest errors of law and fact. The District Court concluded that no manifest, i.e.,

8

"obvious, apparent and glaring," errors existed and that the court had chosen to accept the evidence and testimony of Melinda and her witnesses over Jim's. The court noted that each of Jim's arguments presented in his motion to amend had been presented and rejected by the District Court. Consequently, the court concluded the Jim had not met the requirements of Rule 59. We agree.

¶20 Having determined that the record supports the District Court's findings and conclusions as they apply to the D Reorg of Bi Lo, we need not address other arguments related to that issue presented by Jim on appeal.

¶21 *Did the District Court abuse its discretion in valuing and distributing the marital estate?*

¶22 As noted above, in order to equitably distribute the marital estate, the District Court established values for the property Jim and Melinda acquired during the marriage. To derive these values, the District Court reviewed valuation evidence from both parties, including a report prepared by a CPA hired by Melinda. This expert witness used a variety of evaluation methods and provided a range of values for PCM based upon various known and unknown factors. Some valuation methods utilized figures and values provided by the December 31, 2012 PCM Balance Sheet. The CPA's values for PCM ranged from $601,000 to $761,500.

¶23 The District Court adopted the lowest figure in the range and attributed a $600,000 value to Jim's business interests in PCM. The court further concluded as a separate valuation that the fixtures and equipment at PCM were worth $108,817. Lastly, the court valued the PCM building and the land beneath at $1,100,000. Jim argues that the District Court overvalued the business interests in PCM by "double-counting" PCM's equipment and fixtures. He asserts that the range of values Melinda's expert suggested for PCM included

9

fixtures and equipment; therefore, he maintains that fixtures/equipment should not have been a separate line item. He relies on the cover letter in which the CPA explains that the range of values provided "would include the business in its entirety, including all tangible and intangible assets of Pattee Creek Market." Jim fails to point out, however, the next sentence in the report: "The estimated values do not include the land, building, or building improvements at the location where Pattee Creek Market operates."

¶24 A "fixture" is defined as "[p]ersonal property that is attached to land or a building and that is regarded as an irremovable part of the real property . . . ." *Blacks's Law Dictionary* 755 (Bryan A. Garner ed., 10th ed. 2014). Based upon this definition and the CPA's express caveat that the valuations do not include the land and building, Jim's assertion is not persuasive. Additionally, PCM's December 2012 Balance Sheet indicates that PCM's total current assets (including, but not limited to, bank accounts, accounts receivable, and inventory) had a value of $733,235; the building with the land and building improvements was valued at $1,114,909; and the fixtures and equipment within the store were valued at $108,817. Because the CPA expressly stated in his report that the $600,000 value for PCM did not include the building in which PCM is located, we conclude the District Court did not err in determining that the $600,000 value did not include the value of the fixtures and equipment within PCM's building.

¶25 As discussed above, the District Court received conflicting evidence vis-à-vis the D Reorg and the valuation of PCM. As it is the province of the district court to weigh evidence and witness credibility, we will not disturb a district court's ruling if there is evidence in the

10

record, as here, to support the decision. Therefore, we conclude the District Court neither erred nor abused its discretion in ruling as it did on these issues.

¶26 Finally, we note that in its order denying Jim's motion to amend, the District Court stated "from a practical perspective, an IRS Private Letter Ruling would now be appropriate and alternative proposals to mitigate tax consequences considered if there is an adverse ruling from the IRS." Moreover, during the hearing both Melinda's CPA and Jim's CPA indicated that a private ruling was "advisable" and could "give you a lot of comfort going forward." However, there is nothing in the record to indicate whether Jim obtained, or attempted to obtain, a private ruling from the IRS. If such an advisory ruling is obtained and is adverse to Jim, or if the IRS rejects the D Reorg, Jim could then explore other options, including moving to modify the judgment.

## CONCLUSION

¶27 For the foregoing reasons, we affirm the District Court's order requiring Jim to undertake a divisive reorganization of PCM. We further affirm the court's valuation of PCM.

/S/ PATRICIA COTTER

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT

11