FILED

02/20/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0671

DA 22-0671

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 33N

IN RE THE MARRIAGE OF:

SHERRI L. FROST,

       Petitioner and Appellant,

  and

KEVIN ROY FROST,

       Respondent, Appellee,
       and Cross-Appellant,

  with

FROST LIMITED PARTNERSHIP,

       Respondent, Appellee,
       and Cross-Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
                In and For the County of Ravalli, Cause No. DR 15-165
                Honorable Howard F. Recht, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Marybeth M. Sampsel, Measure Law, PC, Kalispell, Montana

      For Appellee:

          David B. Cotner, Natalie Hammond, Cotner Ryan Law, PLLC,
          Missoula, Montana (for Kevin Roy Frost)

          Reid J. Perkins, Worden Thane, PC, Missoula, Montana
          (for Frost Limited Partnership)

Submitted on Briefs: January 17, 2024

Decided: February 20, 2024

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Sherri L. Frost (Sherri) appeals and Kevin Frost (Kevin) cross-appeals from the Findings of Fact, Conclusions of Law, and Final Decree of Dissolution of Marriage issued October 31, 2022, by the Twenty-First Judicial District Court, Ravalli County. We affirm.

¶3 The parties have a long-term marriage. They were married September 17, 1988, and their marriage was dissolved via a bifurcated proceeding as of May 13, 2019, with the court reserving ruling on other outstanding issues—distribution of the marital estate, maintenance, and payment of attorney's fees and costs. The District Court entered its findings, conclusions, and decree nearly 3 ½ years later, on October 31, 2022, from which both parties appeal. The Frost Limited Partnership (FLP), which despite not being a party to the marriage was joined as a named additional respondent, appeals the District Court's dismissal of the FLP's counterclaim which asserted Sherri breached her Spousal Consent agreement by asserting an ownership interest in the FLP.[1]

---

[1] As we conclude the District Court properly valued and then distributed the FLP interest to Kevin, we find it unnecessary to address the FLP's appeal, as no interest in the FLP was awarded to Sherri.

3

¶4     The parties were married when they were both attending college. After Kevin graduated, they moved to Seattle for approximately 6 years where Sherri completed education to be a dental hygienist and began working as such and Kevin worked as a claims adjuster for an insurance company. They moved back to Montana to raise a family[2] and work on Kevin's parents' ranch to eventually take over the ranch. In addition to engaging in daily ranch work and operations, Kevin continued to work as an insurance adjuster and Sherri as a dental hygienist.

¶5     Over time, the parties' marriage deteriorated culminating in a domestic violence incident on February 9, 2016. Subsequent to this incident, Sherri brought a separate civil suit against Kevin and others seeking damages for injuries she sustained during the February 9, 2016 incident. That suit is still pending.

¶6     Sherri initially filed for divorce in June 2015. Trial was held in June 2021 and the court issued its findings, conclusions, and decree on October 31, 2022. The court equally divided the parties' retirement accounts, awarded Sherri the lion's share of the family home, and awarded Kevin all interest in the family ranch operation and the lion's share of the Butte property gifted to him by his parents.[3] Pursuant to the District Court's distribution of assets and debts between the parties, Sherri received 53.2% (nearly $2.7 million) and Kevin received 46.8% (a little over $2.3 million) of the parties' net assets.

---

[2] The parties' two children are now adults.

[3] Attached to the court's order is a more detailed spreadsheet of the equitable apportionment of the parties' assets and debts between them which we need not repeat here.

¶7     Sherri asserts the District Court erred in valuing and awarding the FLP interest and in distributing some interest in the family home to Kevin which she asserts to be contrary to stated policy of the State of Montana as she believes this distribution will require her to continue to negotiate with Kevin post-dissolution. Kevin asserts the District Court erred in concluding Sherri made any contribution to the maintenance of the FLP or Butte property gifted to him and that such assets should have been exclusively retained by him and excluded from the final value of the marital estate available for distribution.

¶8     We review a district court's findings of fact to determine whether they are clearly erroneous. *In re Marriage of Tummarello*, 2012 MT 18, ¶ 21, 363 Mont. 387, 270 P.3d 28. A finding is clearly erroneous if it is not supported by substantial credible evidence, if the trial court misapprehended the effect of the evidence, or if a review of the record leaves us with the definite and firm conviction that a mistake has been committed. *In re Marriage of Edwards*, 2015 MT 9, ¶ 9, 378 Mont. 45, 340 P.3d 1237. A district court has broad discretion to apportion a marital estate in a manner equitable to each party under the circumstances. *See* § 40-4-202, MCA; *In re Marriage of Funk*, 2012 MT 14, ¶ 6, 363 Mont. 352, 270 P.3d 39. We review conclusions of law to determine if they are correct. *In re Marriage of Kesler*, 2018 MT 231, ¶ 15, 392 Mont. 540, 427 P.3d 77.

¶9     The parties' respective positions with regard to the FLP are two sides of the same coin. Sherri asserts the court erred in valuing the FLP according to its operational value as a ranch, rather than its asset value.[4] Kevin asserts the court properly valued the ranch

---

[4] Sherri also asserts the court's valuation violated the FLP's partnership agreement and Montana law specific to how to value a partnership interest for a dissociated partner. Sherri asserts that she

property to determine the total value of the FLP and his 40% interest in the FLP. The parties each presented an expert, both of whom testified the value of the FLP was tied to the value of its real property. In determining this value, Sherri's expert divided the ranch into separate parcels and then valued each of those parcels. Whereas Kevin's expert valued the property as one parcel—as a ranch.

¶10    "'[I]t is exclusively within the province of the trier of fact, and not this Court, to weigh evidence, including conflicting evidence, and judge the credibility of the witnesses.'" *In re Marriage of Edwards*, ¶ 18 (quoting *Owen v. Skramovsky*, 2013 MT 348, ¶ 22, 372 Mont. 531, 313 P.3d 205). "'[W]e will not second-guess a district court's determinations regarding the strength and weight of conflicting testimony.'" *In re Marriage of Edwards*, ¶ 18 (quoting *Owen*, ¶ 22). "Further, the 'district court has discretion in determining the value of property in a dissolution. Its valuation can be premised on expert testimony, lay testimony, documentary evidence, or any combination thereof. . . . [A]s long as the valuation . . . is reasonable in light of the evidence submitted, we will not disturb the finding on appeal.'" *In re Marriage of Lewis*, 2020 MT 44, ¶ 8, 399 Mont. 58,

"is being expelled from her ownership interest in FLP because of Kevin's illegal and immoral conduct" and as such, "she is entitled to a valuation" based on the ranch property as separate land parcels, rather than its operational value as a ranch. As Sherri is not a partner in the FLP, the partnership agreement does not apply to her and she is not a dissociated partner, which she admits in her briefing. Further, Montana law does not provide for specific valuation of property based on marital misconduct, but rather requires "the court, without regard to marital misconduct, . . . equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title to the property and assets is in the name of the husband or wife or both." Section 40-4-202, MCA.

6

458 P.3d 1009 (quoting *In re Marriage of Robinson*, 269 Mont. 293, 296, 888 P.2d 895, 897 (1994)) (internal quotation marks and citations omitted).

¶11 Sherri's argument asks us to reweigh the evidence in her favor and ignore the record which demonstrates the subject property has been operating as a ranch going on three generations, not as a land development operation. It is "the province of the district court to weigh evidence and witness credibility[.]" *In re Marriage of Edwards*, ¶ 25. The District Court was free to weigh one expert's testimony over another to determine the property should be valued as a ranch, rather than multiple separate parcels. We will not disturb a district court's ruling if there is evidence in the record, as here, to support its decision. *In re Marriage of Edwards*, ¶ 25. There was no clear error.

¶12 Sherri next asserts that even if the District Court did not err in accepting Kevin's expert valuation of the ranch property as a whole, it erred by failing to apply an appreciation increase over the expert's initial valuation.

¶13 Sherri asserts both experts opined the property had increased in value since their original evaluations, but that Kevin's expert was merely unable to provide a multiplier for the increase. We are not persuaded by this assertion. Although there was testimony from Sherri's expert the land values would be increased, she did not opine as to what any increased values would be. Likewise, Kevin's expert provided no opinion as to any increase as there were no comparison properties available against which to determine any increased valuation. While the District Court could have made an upward adjustment based on interim appreciation, it was not obligated to under § 40-4-202(1), MCA, and indeed had no evidence to make an upward adjustment and any attempt to do so would

7

have been speculative at best. As we have previously held, a court must base its decision on the evidence before it, "'speculation, conjecture, inference, or guess do not constitute credible factual evidence.'" *In re Marriage of Bartsch*, 2007 MT 136, ¶ 28, 337 Mont. 386, 162 P.3d 72 (quoting *In re Marriage of Harper*, 1999 MT 321, ¶ 35, 297 Mont. 290, 994 P.2d 1). The record developed by the parties at trial supported the court's factual determinations made regarding valuation of the ranch property. So long as a valuation is reasonable in light of the evidence, this Court will not disturb that finding on appeal. *In re Marriage of Frank*, 2022 MT 179, ¶ 39, 410 Mont. 73, 517 P.3d 188.

¶14 Sherri next asserts the District Court's award—90% to her and 10% to Kevin—of the marital residence, known as the Moose Springs property, is contrary to stated policy of the State of Montana as she believes this distribution will require her to continue to negotiate with Kevin post-dissolution. We are not persuaded by Sherri's position, and her assertions that Kevin could intervene in the sale of this property to interfere with her ability to obtain her interest in the sales proceeds are, at best, speculative. The District Court provided this property to be listed for sale by a licensed realtor selected by Sherri alone and provided the property be sold at a value acceptable to Sherri alone. As Sherri will exclusively select the realtor and the acceptable sales price, there is no reason she will be required to negotiate with Kevin at all. Further, Kevin has represented in his opening brief he does not intend to participate in the sale of the marital residence, other than to sign

8

whatever documents are requested by the real estate agent or closing agent—which can be done separately and does not require interaction or contact with Sherri.[5]

¶15    Finally, Sherri asserts the District Court erred in denying her maintenance request. Sherri's maintenance request was that the court award her assets in lieu of maintenance as she did not want to have to rely on Kevin or have ongoing interaction with him in the future. She acknowledges "that Kevin was awarded approximately $2.23 million while Sherri received $2.75 million" such that under "the District Court's findings, [she] received approximately $500,000 in lieu of maintenance." She then asserts that unequal distribution favoring her fails to account for the actual value of the FLP interest—reasserting the ranch property should be valued as several parcels, not as an operational ranch. At the bottom line, Sherri asserts entitlement to nearly all of the parties' assets based on Kevin's assault of her on February 9, 2016. From the District Court's findings, it is clear the court considered that because of the injuries Sherri sustained on February 9, 2016, she is unable to work which affects her ability to earn and provide for herself in the future. The court also found that she would have difficulty enforcing a maintenance order against Kevin and that ordering such would result in needless and continued litigation. As such, the court provided for an unequal division of the parties' assets and debts with Sherri receiving approximately $500,000 more than Kevin in lieu of maintenance. Thus, the District Court

---

[5] Should Kevin fail to abide by this representation, Sherri may compel such via appropriate request or contempt action to the District Court.

did exactly what Sherri requested—awarded her property in lieu of maintenance.[6] The District Court carefully considered the employment and financial consequences of Kevin's marital abuse in determining to award Sherri a greater portion of the parties' assets in lieu of maintenance. *See In re Marriage of Patton*, 2015 MT 7, ¶ 58, 373 Mont. 22, 340 P.3d 1242; *see also In re Fenzau*, 2002 MT 197, ¶ 26, 311 Mont. 163, 54 P.3d 43. Accordingly, we find no error by the District Court.

¶16 With regard to his cross-appeal, Kevin argues the District Court abused its discretion in dividing the marital estate because the court failed to consider the factors set forth in § 40-4-202(1)(a)-(c), MCA, to his gifted assets—his FLP interest and the Butte property— and required Kevin to share his gifted assets with Sherri, rather than exclude them from the marital estate. We are equally unpersuaded by Kevin's appeal as he too asks us to reweigh the evidence and give no weight to Sherri's testimony as to her contributions to the marriage and her decades of giving her life every day for the ranch.

¶17 In dissolution proceedings, § 40-4-202(1), MCA, requires the district court to equitably apportion "*everything* owned jointly or by either party . . . regardless of when or how it was acquired." *In re Marriage of Funk*, ¶ 13 (emphasis in original). When apportioning gifted property, the court must also "consider those contributions of the other spouse to the marriage, including: (a) the nonmonetary contribution of a homemaker;

---

[6] It is noted that Sherri perceives the failure of the District Court to, in essence, give her nearly all of the parties' assets has made Kevin "judgment proof." The District Court's task in this case was, as prescribed by § 40-4-202, MCA, to equitably, without regard to marital misconduct, apportion the parties' assets between them which is exactly what the District Court did. The District Court was not taxed with apportioning assets between the parties so as to make levying on the assets awarded to Kevin easier at a later date through a separate civil suit.

(b) the extent to which the contributions have facilitated maintenance of the property; and

(c) whether or not the property division serves as an alternative to maintenance arrangements." Section 40-4-202(1), MCA. These factors, however, are not "a constraint on the district court's essential mandate, which is to equitably divide all assets of the parties, however and whenever acquired," based on the unique factors of each case. *In re Marriage of Funk*, ¶¶ 16, 19. While a party claiming ownership of gifted property, however, "is entitled to argue that it would be equitable to award him or her the entirety of such property," the court "is not required to subtract [gifted property] from the marital estate before dividing it, nor is it limited in its authority to determine how such assets are to be divided." *In re Marriage of Funk*, ¶¶ 16, 19. Equitable distribution of the marital estate depends on the unique facts and circumstances of each case. *In re Marriage of Spawn*, 2011 MT 284, ¶ 9, 362 Mont. 457, 269 P.3d 887.

¶18 The District Court correctly included the value of the FLP and Butte property as part of the total value of the marital estate under our precedent in *In re Marriage of Funk* and § 40-4-202(1), MCA. The District Court considered the factors of § 40-4-202(1), MCA, in making its distribution. Monetary contributions are only one factor in determining the equitable division of the parties' assets, not the determinative factor. *See In re Marriage of Davis*, 1999 MT 218, ¶ 26, 295 Mont. 546, 986 P.2d 408. The District Court explained that Sherri contributed to the long-term marriage through her employment and as a homemaker and in providing care for the parties' children. Sherri testified to making contributions to the overall ranch operation during the marriage including purchasing the family home to provide additional services, land, and water for cattle; caring

11

for their children while Kevin did ranch work; preparing meals and taking them to him while he was engaged in ranch work; helping with ranch projects; working brandings; and giving her life every day for the majority of their marriage to the ranch. The court found "that the time, resources, energies, and funds of both parties were committed to the accumulation and preservation of the parties' lifestyle and assets." From our review of the record, this finding is supported by substantial, credible evidence. The court's findings demonstrate it also properly considered the duration of the marriage; both parties' income, future earning capacity, education and skills, health and age; each party's liabilities, maintenance needs, and contribution of monetary value to the property; and each party's overall contributions to the marriage and family. Further, the court clearly indicated the ultimate property distribution was made in lieu of awarding Sherri maintenance. It is clear the District Court considered all the factors of § 40-4-202(1), MCA.

¶19 Upon review of the record, we find no error by the District Court. The District Court set forth detailed findings of fact supported by substantial evidence. Thus, we conclude the District Court's findings of fact are not clearly erroneous—they were supported by substantial credible evidence, the District Court did not misapprehend the effect of the evidence, and we are not left with the definite and firm conviction that a mistake has been committed. The court then thoroughly and conscientiously considered the requirements of § 40-4-202, MCA. The District Court did not abuse its discretion in apportioning the parties' assets and debts between them and its conclusions of law are correct.

¶20 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the

12

Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶21 Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR